**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

LARRY MAGAR,

      Petitioner-Appellant,

v.

DAVID PARKER, Warden,

      Respondent-Appellee.

No. 06-6369
(D.C. No. CIV-06-138-HE)
(W.D. of Oklahoma)

### ORDER DENYING CERTIFICATE
### OF APPEALABILITY

Submitted on the briefs[*]:

Larry Magar, pro se.

Before **LUCERO, HARTZ,** and **GORSUCH**, Circuit Judges.

**GORSUCH**, Circuit Judge.

     Larry Magar, an Oklahoma state prisoner, seeks a certificate of

appealability ("COA") to pursue a habeas petition challenging the adequacy of

---

[*] After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).
The case is therefore ordered submitted without oral argument.

prison disciplinary hearing processes that resulted in his loss of earned good behavior credits in 2005. Yet, prior to his disciplinary proceeding and federal petition, Oklahoma adopted a statute affording judicial review in state court of due process claims exactly like Mr. Magar's. Because Mr. Magar did not avail himself of this potential state recourse before instituting a federal action, his habeas petition is procedurally barred and we, like the district court, must deny his request for a COA.

∗   ∗   ∗

During a "shake down" on July 26, 2005, Oklahoma state prison officials found Mr. Magar in possession of items they claimed to be a tattoo gun, tattoo needles, and ink. Three days later, a prison investigator afforded Mr. Magar the opportunity to present any evidence he wished, an opportunity Mr. Magar declined. The investigator eventually charged Mr. Magar with possessing contraband[1] and a formal hearing took place in August. Mr. Magar was found guilty of the charged infraction with the primary upshot being that he was stripped of 365 days worth of accrued good behavior credits and thus the opportunity to shave a year off his prison sentence.

---

[1] Oklahoma Department of Corrections Rule 09-2 prohibits the "[p]ossession/introduction of any gun, firearm, weapon, ammunition, knife, sharpened instrument, or Class A tool, to include keys and security equipment." This offense is categorized as a "class X" offense, the punishment for which includes revocation of 365 days of good time credits.

Mr. Magar appealed this disposition through the appropriate channels within the Oklahoma Department of Corrections ("ODOC"). On September 21, 2005, however, his appeal was finally rejected and Mr. Magar, proceeding *pro se*, filed a writ of habeas corpus on February 9, 2006, with the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 2241. Mr. Magar's petition alleged that the ODOC disciplinary process failed to comply with the rigors required by the constitutional guarantee of procedural due process.[2]

A magistrate judge recommended dismissal of Mr. Magar's action for failure to exhaust state court remedies because the time permitted by state law to obtain judicial review in state court of an ODOC disciplinary proceeding involving the revocation of earned good behavior credits had elapsed. The district court adopted the magistrate's report but ordered Mr. Magar to be given a further opportunity to show cause why his action should not be dismissed. The magistrate judge heard again from Mr. Magar and again recommended dismissal. The district court concurred, dismissed Mr. Magar's petition, and denied his

---

[2] More specifically, Mr. Magar alleged that he was found guilty based on insufficient evidence; that he was denied an impartial investigation; and that he should have been afforded the assistance of a staff representative at his disciplinary hearing before his credits for good time behavior were revoked.

application for a COA under 28 U.S.C. § 2253(c)(1)(A).[3]  As is his right under

Section 2253(c)(1), Mr. Magar now seeks a COA from us.

∗   ∗   ∗

Where, as here, the district court has denied a COA on procedural grounds,

Supreme Court precedent instructs that we may not ourselves issue a COA

without first finding "that jurists of reason would find it debatable whether the

petition states a valid claim of the denial of a constitutional right *and* that jurists

of reason would find it debatable whether the district court was correct in its

procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis

added).  Even viewing Mr. Magar's application with the generosity due *pro se*

filings, *see Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007), we cannot

find a way to clear these high hurdles.

Congress has emphatically directed us that habeas petitioners seeking relief

in federal court must first exhaust all available state court remedies – that is,

unless doing so would be futile because of "an absence of available State

corrective process" or because "circumstances exist that render such process

ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1); *see*

*also Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000) (recognizing that the

exhaustion requirements contained in Section 2254 apply to petitions brought

---

[3]  Under our decision in *Montez v. McKinna*, 208 F.3d 862, 867 (10th Cir. 2000), a state prisoner seeking relief under Section 2241 must obtain a COA in order to be heard on the merits of his or her appeal.

under the aegis of Section 2241). Three years ago, in *Gamble v. Calbone*, we held that, at that time, Oklahoma law did not afford inmates any means for seeking state court review of prison disciplinary proceedings involving the revocation of earned good behavior credits in circumstances like those now before us. 375 F.3d 1021, 1026-27 (10th Cir. 2004). Accordingly, and rather self-evidently, we concluded that requiring exhaustion of state court remedies would indeed be futile under Congress's test. *See id.*; *Wallace v. Cody*, 951 F.2d 1170, 1172 (10th Cir. 1991).

Shortly after our decision in *Gamble*, and before Mr. Magar's alleged disciplinary infraction, however, Oklahoma amended its laws. On May 10, 2005, Oklahoma began affording judicial review of prison disciplinary proceedings that involve the revocation of earned good behavior credits. *See* Okla. Stat. Ann. tit. 57, § 564.1 (West 2007). Oklahoma's statute expressly requires reviewing state courts to determine whether due process was afforded to the inmate by state prison officials, including whether the inmate was provided an opportunity to present relevant documentary evidence or call witnesses, and whether any evidence existed in the record to support the finding of guilt. *Id.* The statute also demands, however, inmates to petition state courts for review within 90 days after the inmate is notified of ODOC's final decision. *Id.*

In light of this intervening law, we can no longer say that Oklahoma prisoners denied the benefit of good behavior credits are categorically excused

from exhausting state court remedies before proceeding to federal court on the basis that there is an "absence of available State corrective process." 28 U.S.C. § 2254(b)(1). Likewise, we see no way in which one might conclude that the process afforded by Oklahoma is "ineffective to protect the rights of the applicant" in this case. *Id.* While Oklahoma's statute does not afford judicial review as to the credibility of witnesses or the weight of the evidence, and limits the forms of relief a court may provide a prisoner, it does demand procedural regularity in ODOC proceedings and specifies that, if the court finds due process lacking, ODOC will be compelled to afford new proceedings compliant with the demands of due process. *See* Okla. Stat. Ann. tit. 57, § 564.1(E). Mr. Magar has not identified any way in which this statute would have been, if invoked, ineffective to protect his rights. To the contrary, each of the putative errors cited in his petition involve the denial of procedural due process, *see supra* n. 2, and could be remedied by an order commanding ODOC to afford Mr. Magar with additional process.

Mr. Magar's failure to avail himself of potential recourse in state courts is further complicated by the fact that it is now far too late for him to file; under Oklahoma's law, Mr. Magar had 90 days from September 21, 2005, to seek relief in state court, something he admittedly failed to do. The Supreme Court has explained that if state court remedies are no longer available because the prisoner failed to comply with the deadline for seeking review, the prisoner's procedural

default functions as a bar to federal habeas review. *Woodford v. Ngo*, 126 S.Ct. 2378, 2387 (2006); *see also Gray v. Netherland*, 518 U.S. 152, 162 (1996) (such a "procedural bar . . . gives rise to exhaustion [and] provides an independent and adequate state-law ground for the [sanction imposed]"); *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Cargle v. Mullin*, 317 F.3d 1196, 1212 n.15 (10th Cir. 2003).

Disputing none of this, Mr. Magar responds that his procedural default nonetheless should be excused. And it is certainly true that we have held a procedural default may be excused if a petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Bland v. Sirmons*, 459 F.3d 999, 1012 (10th Cir. 2006) (quoting *Coleman*, 501 U.S. at 750).

Under the first of these tests, Mr. Magar contends his default should be excused because it was caused by prison officials who, at some point and for some period, placed him in the restrictive housing unit ("RHU") where he lacked access to the law library to perform necessary legal research. The magistrate judge and district court found this contention unpersuasive, however, because Mr. Magar failed to specify the dates he was allegedly held in the RHU and failed to identify any act or omission by prison officials that would have barred his access to the courts; without such information, the magistrate judge and district court

found themselves unable to conclude that Mr. Magar was confined in the RHU during the ninety day period after September 21, 2005, or that he was denied access to legal resources while in the RHU, let alone both. We are in much the same position. We have no information before us that would allow us to conclude that Mr. Magar was in the RHU during all, most, or indeed any, of the relevant ninety day period – and neither do we have any information suggesting that prison officials effectively barred his access to the courts during his RHU confinement. Indeed, as the magistrate judge and district court noted, ODOC policy provides that inmates in segregated housing may, at their request, receive visits five days per week, excluding holidays, by members of the law library staff or an inmate research assistant to assist with legal filings, and Mr. Magar has provided no evidence suggesting that he was denied such assistance while in the RHU or that such assistance was insufficient to prepare the requisite state filing.

Alternatively, Mr. Magar asserts that his procedural default should be excused to avoid a fundamental miscarriage of justice. This exception, however, is a markedly narrow one, implicated only in "extraordinary case[s] where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999) (quotation omitted). Mr. Magar claims that the alleged tattoo gun found in his cell was nothing more than a "small electric motor" and that the tattoo needles were actually sewing needles. But Mr. Magar does not dispute that the items

found were his; neither does he supply us with any plausible alternative explanation for his possession of the "small electric motor" and alleged tattoo ink. Under these circumstances, we must agree with the district court's assessment that Mr. Magar has not approached establishing the requisite probability of his actual innocence.

✳   ✳   ✳

Because we find no jurists of reason would find it debatable whether the district court was correct in its ruling that Mr. Magar's federal petition is procedurally barred by virtue of his failure to seek state court review, we deny Mr. Magar's application for a COA and dismiss his appeal. We do, however, grant Mr. Magar's request for leave to appear before us *in forma pauperis*.

*So ordered*.