**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 29, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ANTONIO DEANDRE SMITH,

    Petitioner - Appellant,

v.

JOE M. ALLBAUGH, Director,

    Respondent - Appellee.

No. 17-5095

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:15-CV-00445-GKF-FHM)**
_____

John T. Carlson, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Petitioner-Appellant.

Ashley L. Willis, Assistant Attorney General (Mike Hunter, Attorney General of Oklahoma, with her on the brief), Oklahoma City, Oklahoma, for Respondent-Appellee.
_____

Before **McHUGH**, **MORITZ**, and **EID**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

Antonio Smith appeals the district court's order denying his 28 U.S.C. § 2254 petition. For the reasons discussed below, we reverse the district court's order and remand for further proceedings.

## Background[1]

Smith pleaded guilty in Oklahoma state court to drug trafficking, possessing a firearm as a felon, and a variety of related charges. Smith's habeas claims center around a plea offer that one of Smith's attorneys allegedly didn't communicate to him. Essentially, Smith says that he rejected a plea offer from the state that his first attorney presented to him, under which Smith would serve 25 years in prison. Smith's first attorney subsequently withdrew[,] and the sentencing court appointed a new attorney to represent him. Smith says that his second attorney told him shortly after she was appointed that the state had withdrawn an offer for a 20-year sentence. But Smith told his second attorney that his first attorney never communicated a 20-year offer to him.

On the day his case was set to go to trial, Smith pleaded guilty without the benefit of a plea agreement. During the plea hearing, the state told the court that Smith had rejected its offer for a 20-year sentence. When the sentencing court asked Smith's second attorney if the state's recollection of its prior offer coincided with her own, Smith's second attorney responded, "Yes, it does." R. 20. But when the court more specifically asked Smith's second attorney if she discussed the 20-year offer with Smith, she equivocated and responded, "We discussed recommendations; we discussed counter-offers; I conveyed counter-offers. Those were rejected." *Id.*

It's not clear from this vague response whether Smith's second attorney meant to convey to the court that Smith was presented with and rejected the 20-year offer. But it is clear that she didn't tell the court about Smith's assertion that his first attorney never communicated such an offer to him. Nor did she mention that she didn't represent Smith when plea bargaining began, despite her representation to the court that she discussed prior offers with Smith. And adding to this confusion, Smith's first attorney told the Oklahoma Bar Association that—contrary to what the state told the sentencing court—the lowest sentence the state ever offered Smith was 25 years. So it's not clear from the record what offer the state actually made and what offer Smith actually rejected.

The sentencing court ultimately sentenced Smith to 30 years in prison. Smith neither sought to withdraw his plea nor appealed within the 10 days in which Oklahoma allowed him to do so. *See* Okla. R. Crim. App. 2.1(B), 4.2(A). But more than seven months later, Smith

---

[1] We take these facts from our earlier order granting Smith a certificate of appealability (COA). *See* § 2253(c)(1)(A); Order, *Smith v. Allgbaugh,* No. 17-5095, (10th Cir. Feb. 6, 2018).

filed an application for post-conviction relief in state district court, requesting an appeal out of time.

In that application, Smith alleged that both his attorneys were constitutionally ineffective—his first attorney for failing to accurately communicate a favorable plea offer, and his second attorney for failing to alert the sentencing court to that issue. Smith further alleged that his second attorney never advised him that he had meritorious grounds to appeal his conviction. The state district court denied Smith's motion because Smith didn't take any steps in the 10 days following his plea to withdraw the plea or appeal. *See* Okla. R. Crim. App. 2.1(B), 4.2(A). It further found that Smith hadn't shown he failed to appeal or to move to withdraw his plea through no fault of his own. *See* Okla. R. Crim. App. 2.1(E)(1) ("A petitioner's right to appeal [out-of-time] is dependent upon the ability to prove he/she was denied an appeal through no fault of his/her own.").

Smith appealed to the Oklahoma Court of Criminal Appeals (OCCA), which likewise concluded that Smith hadn't established that his failure to appeal was through no fault of his own. *See id.* Specifically, the OCCA explained that Smith "knew about the [20-year] plea offer, and heard his counsel state that it had been rejected, before he entered his plea of guilty" but nevertheless "voluntarily entered his plea of guilty, and did not elect to initiate appeal proceedings." R. 130. In other words, the OCCA apparently concluded that it was Smith's fault he didn't appeal because he knew the factual basis for his appeal during the 10 days following his sentence. It therefore denied his application for an appeal out-of-time. And without an appeal out-of-time, the OCCA couldn't reach his claims that his attorneys were ineffective. *See Logan v. State*, 293 P.3d 969, 973 (Okla. Crim. App. 2013) (explaining that "issues that were not raised previously on direct appeal, but which could have been raised, are waived for [post-conviction] review" (citing Okla. Stat. Ann. tit. 22, § 1086)).

Smith then filed the instant petition in federal district court. Smith's original petition only asserted two grounds for relief: ineffective assistance [of counsel (IAC)] by his first attorney for failing to accurately communicate the state's 20-year plea offer, and [IAC] by his second attorney for failing to alert the court to the first attorney's error. More than 17 months later, Smith filed a motion to supplement his petition, alleging that his second attorney had also been constitutionally ineffective in failing to advise him to appeal and move to withdraw his plea.

The district court treated Smith's motion [to supplement] as a motion to amend; determined that Smith's new [IAC] claim didn't relate back to the initial filing date; and concluded that the claim was therefore

3

untimely under [§ 2244(d)(1)]. *See* Fed. R. Civ. P. 15(c). It further ruled that Smith's two timely [IAC] claims were procedurally defaulted because the OCCA denied them on independent and adequate state procedural grounds—i.e., that Smith neither (1) timely appealed or sought to withdraw his plea; nor (2) demonstrated that he failed to do so through no fault of his own. *See Banks v. Workman*, 692 F.3d 1133, 1144 (10th Cir. 2012) (explaining that constitutional claims rejected by state court on independent and adequate state procedural grounds are normally barred from habeas review in federal court). The district court also concluded that Smith hadn't shown cause and prejudice to excuse this procedural default. *See Magar v. Parker*, 490 F.3d 816, 819 (10th Cir. 2007) (explaining that § 2254 petitioner can overcome procedural default by showing "cause for the default and actual prejudice" (quoting *Bland v. Sirmons*, 459 F.3d 999, 1012 (10th Cir. 2006))). In doing so, the district court deferred to the OCCA's factual conclusions that Smith knew about the 20-year plea deal during the time he had to appeal and move to withdraw his plea but nevertheless failed to do so. Thus, the district court denied Smith's petition.

Order at 1-5, *Smith*, No. 17-5095.

After the district court denied Smith's motion, we declined to grant Smith's request for a COA to appeal the portion of the district court's order treating as untimely the IAC claim he raised in his motion to supplement. *See* § 2253(c)(1)(A). But we did grant Smith a COA to appeal the portions of the district court's order denying relief on his two timely IAC claims.

## Analysis

Smith's habeas petition advances three overlapping and layered IAC claims. For ease of reference, we refer to these claims numerically, in the order in which the actions giving rise to them allegedly occurred. Smith asserts that (1) his first attorney failed to communicate a favorable 20-year plea offer to him (the First IAC Claim); (2) his second attorney failed to alert the sentencing court to the first attorney's

4

failure to communicate the 20-year plea offer (the Second IAC Claim); and (3) his second attorney failed to advise him to pursue an appeal or to withdraw his plea based on the first attorney's alleged ineffectiveness (the Third IAC Claim).

The district court ruled that the Third IAC Claim was untimely—a ruling that isn't before us. But its rulings related to the First and Second IAC Claims are before us: the district court declined to reach the merits of these claims because it concluded that (1) the claims were procedurally defaulted and (2) Smith failed to show cause to excuse the default. We need not and do not address the first part of the district court's ruling to resolve this appeal. Instead, we begin by assuming that the First and Second IAC Claims are procedurally defaulted and proceed to consider whether Smith has shown cause and prejudice sufficient to overcome that default.

In answering that question, we begin by detailing the cause-and-prejudice standard and applying it to this case, a process that includes addressing and incorporating substantive IAC principles. We ultimately conclude that because Smith demonstrates cause and prejudice to excuse any procedural default, the district court erred in failing to address the merits of the First and Second IAC Claims. But because we determine that a critical factual conflict prevents us from resolving the merits of these claims in the first instance, we remand to the district court for an evidentiary hearing.

## I.    Cause and Prejudice to Excuse Procedural Default

The procedural-default rule generally prevents a federal court from reviewing a habeas claim when the state court declined to consider the merits of that claim

based "on independent and adequate state procedural grounds." *Maples v. Thomas*,

565 U.S. 266, 280 (2012) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)).

Here, for instance, we've assumed that Smith procedurally defaulted the First and

Second IAC Claims by failing to bring those claims in a timely direct appeal.[2] *See*

*Banks*, 692 F.3d at 1144 (explaining that procedural default occurs when "state court

dismisses federal [habeas] claim on the basis of noncompliance with adequate and

independent state procedural rules"). But a court may excuse a procedural default "if

a petitioner can 'demonstrate cause for the default and actual prejudice as a result of

the alleged violation of federal law.'" *Magar*, 490 F.3d at 819 (quoting *Bland*, 459

F.3d at 1012). Smith argues that he can show both cause and prejudice here.

## A. Cause

Smith first argues that the Third IAC Claim establishes the cause required to

overcome any procedural default of the First and Second IAC Claims. "Cause for a

procedural default exists where 'something *external* to the petitioner, something that

cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the

[s]tate's procedural rule.'" *Maples*, 565 U.S. at 280 (first two alterations in original)

---

[2] The OCCA expressly refused to grant Smith an out-of-time direct appeal, thereby declining to reach the merits of the First and Second IAC Claims in such an appeal. *See* Okla. R. Crim. App. 2.1(E)(1) (governing when defendant may pursue out-of-time appeal). The OCCA also, albeit implicitly, refused to consider the merits of these two IAC claims *in Smith's postconviction proceeding*. *See Logan*, 293 P.3d at 973 (providing that in postconviction proceeding, "issues that were not raised previously on direct appeal, but which could have been raised, are waived"). At the heart of both conclusions is that the OCCA declined to consider the merits of Smith's IAC claims because Smith failed to raise them in a timely direct appeal. *See* Okla. R. Crim. App. 2.1(B), 4.2(A).

6

(quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). And an attorney's constitutionally deficient performance constitutes cause when it's an external factor behind a petitioner's failure to comply with state procedural rules. *See Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017). An attorney's performance is constitutionally deficient if a defendant can show both that the attorney performed deficiently (i.e., "that counsel's representation fell below an objective standard of reasonableness") and that the deficient performance caused prejudice (i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). Thus, to demonstrate that the Third IAC Claim constitutes cause to overcome the procedural default, Smith must demonstrate that (1) his second attorney performed deficiently in failing to consult with him about an appeal and (2) but for this deficient performance, there exists a reasonable probability that Smith would have appealed. *See Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (explaining how *Strickland* test for IAC operates in context of failure-to-consult claims).

But before analyzing whether Smith can show deficient performance and resulting prejudice, we first address and reject the state's threshold arguments that the Third IAC Claim can't constitute cause because it's unexhausted and untimely.

The state accurately points out that when a petitioner relies on an IAC claim to establish cause to overcome a procedural default, the petitioner must first exhaust that IAC claim in state court. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (holding that IAC claim must be presented to state court as independent claim before

7

it can be used to establish cause for procedural default). And according to the state, Smith failed to exhaust the Third IAC Claim.

We disagree. A claim is exhausted so long as it "was 'presented' to the state courts." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 489 (1986)). And when giving Smith's pro se state-court pleadings the liberal construction they warrant, *see Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006), it's clear that Smith presented the Third IAC Claim to the relevant state court. Indeed, the first ground in Smith's application to the OCCA for postconviction relief stated that "[a]s a result of not being timely [and] properly informed o[f] [his other IAC claims], [Smith] also wasn't able to make an informed decision as to whether or not [he] should appeal the case." R. 122. We need not read Smith's pro se pleadings all that liberally to conclude that he presented the Third IAC Claim, alleging failure to consult about an appeal, to the OCCA. *See Edwards*, 529 U.S. at 452. Thus, we reject the state's argument that Smith failed to exhaust the Third IAC Claim.

The state also suggests that the Third IAC Claim doesn't establish cause because it was untimely. As we stated in our COA order, we agree that this claim was untimely. *See* Order at 15–16, *Smith*, No. 17-5095. But we fail to see how that untimeliness impacts the cause-and-prejudice analysis. And the state offers us no assistance on this point. Although it describes the Third IAC Claim as "untimely" and "time-barred," it cites no on-point authority to support its implicit suggestion that an untimely IAC claim—though admittedly barred as a standalone basis for relief—

8

can't serve as cause to overcome a procedural bar on other timely claims. Aplee. Br. 30. Nor have we found any. As such, we find this argument unpersuasive.

Having rejected the state's threshold objections, we now turn to whether the Third IAC Claim provides cause to excuse Smith's procedural default. In this claim, Smith alleges that his second attorney's failure to consult with him about filing an appeal or withdrawing his plea amounts to constitutionally deficient performance. To make that showing, he must demonstrate both deficient performance and resulting prejudice. *See Flores-Ortega*, 528 U.S. at 476–77. We consider each prong in turn.

An attorney has "a constitutionally imposed duty to consult with" a convicted defendant "about an appeal when there is reason to think . . . that a rational defendant would want to appeal." *Id.* at 480. One reason a rational defendant might want to appeal is if "there are nonfrivolous grounds for" doing so. *Id.*

Critically, in determining whether a rational defendant would want to appeal, "courts must take into account all the information counsel knew or should have known." *Id.* Here, Smith contends that his second attorney had a duty to consult with him about an appeal because the second attorney knew or should have known about a nonfrivolous ground for appeal—namely, that Smith's first attorney was ineffective in failing to communicate a 20-year plea offer to him. *See Missouri v. Frye*, 566 U.S. 134, 145–46 (2012) (noting that counsel performs deficiently if he or she fails to communicate plea offer to client and that prejudice results if, among other things, defendant would have accepted offer and offer was more favorable result for defendant). Notably, the state doesn't dispute that an attorney's alleged failure to

9

communicate a plea offer is a nonfrivolous issue. But the state nevertheless argues that the second attorney had no duty to consult with Smith about an appeal. That's because, according to the state, the second attorney didn't know and or have reason to know about this nonfrivolous issue. *See Flores-Ortega*, 528 U.S. at 480 (noting that when determining whether rational defendant would want to appeal based on nonfrivolous claim on appeal, court must consider "all the information counsel knew or should have known").

But the record is not as clear as the state would have it. It does include a letter from the second attorney in which she tells Smith that she was "not privy" to any plea offers the state made through Smith's first attorney. R. 87. But the record also includes the sentencing transcript, in which (1) the prosecutor told the court that the state offered Smith a 20-year plea deal and (2) the second attorney told the court that a 20-year offer "at least coincide[d] with [her] memory of the recommendations." *Id.* at 20. So from the transcript alone, it's clear that Smith's second attorney knew or should have known about the possible existence of a 20-year plea offer. Further, Smith alleges in his habeas petition that he told his second attorney that his first attorney failed to inform him of this 20-year offer. Assuming that to be true, the second attorney knew or at least should have known about a nonfrivolous ground for appeal. *See Flores-Ortega*, 528 U.S. at 480; *Williams v. Kaiser*, 323 U.S. 471, 473–74 (1945) (noting that when lower court denies habeas petition "without giving petitioner an opportunity to prove his allegations," appellate court "must assume that the allegations of the petition are true"). Thus, we reject the state's argument that the

second attorney didn't have a duty to consult with Smith about an appeal because she didn't know or have reason to know that a rational defendant would want to appeal.

The state also notes that Smith himself learned about the 20-year plea offer during the sentencing hearing, when the prosecutor described that offer. According to the state, this means Smith can't show his procedural default (that is, his failure to pursue the First and Second IAC Claims on direct appeal) was caused by an external factor. In support, the state cites *Klein v. Neal*, 45 F.3d 1395 (10th Cir. 1999), for the unremarkable position that a lack of formal legal training is insufficient to establish cause. But Smith doesn't argue that his ignorance alone establishes cause. Instead, he argues that to the extent he was ignorant of the *legal basis* for an appeal, his ignorance was the direct result of his second attorney's constitutionally deficient failure to consult with him about that basis. And that's a distinction with a difference. *Cf. Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir. 1992) (distinguishing between (1) "basic ignorance of the rules or the law" and (2) "lack of [legal] knowledge" stemming from lack of "access to an attorney" for purposes of cause-and-prejudice test). As such, the state's point about the *facts* Smith was aware of simply isn't relevant to the cause inquiry.

To summarize, a rational defendant would have wanted to appeal because there was a nonfrivolous issue to raise in that appeal. *See Flores-Ortega*, 528 U.S. at 480. And because Smith's second attorney knew or should have known about this nonfrivolous issue, she had a duty to consult with Smith about an appeal. *See id.* Her failure to do so constitutes deficient performance. *See id.*; *Heard v. Addison*, 728

11

F.3d 1170, 1187 (10th Cir. 2013) (finding deficient performance where counsel failed to consult defendant about appeal despite "obvious, nonfrivolous grounds for appeal").

Of course, to make out a meritorious IAC claim that establishes cause to excuse any procedural default, Smith must show more than deficient performance; he must show *constitutionally* deficient performance. *See Davila*, 137 S. Ct. at 2065 ("It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel."). As such, we move to the second prong of the IAC analysis and consider whether the deficient failure of Smith's second attorney to consult with him about an appeal caused him prejudice. *See United States v. Horey*, 333 F.3d 1185, 1187 (2003) (noting that to succeed on IAC claim, petitioner must satisfy both *Strickland*'s deficient-performance prong *and* its prejudice prong).

Prejudice in the failure-to-consult context requires a defendant to show "there is a reasonable probability that, but for counsel's deficient failure to consult . . . about an appeal, [the defendant] would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. To make this showing, a defendant may point to "evidence that there were nonfrivolous grounds for appeal." *Id.* at 485; *see also id.* at 485–86 (acknowledging that nonfrivolousness is factor in both deficient-performance and prejudice prongs of failure-to-consult claim).

Here, for the reasons already discussed above, the first attorney's alleged failure to communicate a plea offer to Smith is a nonfrivolous issue that the second

12

attorney knew or at least should have known about. *See Frye*, 566 U.S. at 145. As such (and in the absence of any meaningful counterargument from the state on the prejudice prong), we find that there's a reasonable probability that but for the second attorney's failure to consult about an appeal, Smith would have appealed. *See Heard*, 728 F.3d at 1187 (finding defendant was prejudiced by counsel's failure to consult about appeal on "obvious, nonfrivolous" issues). Thus, we conclude that Smith's second attorney rendered constitutionally ineffective assistance when she failed to consult with Smith about an appeal. *See Davila*, 137 S. Ct. at 2065.

Accordingly, Smith's Third IAC Claim constitutes cause to excuse any procedural default of the First and Second IAC Claims, both of which could have been brought in the appeal that Smith was deprived of by his second attorney's ineffectiveness.

### B.  Prejudice

Having established cause, Smith next argues that he can show prejudice. Critically, in this context, prejudice doesn't refer to the prejudice arising from Smith's second attorney's failure to consult with him about an appeal. Instead, it means prejudice arising "from the errors" that form the basis of Smith's *substantive* claims (here, the First and Second IAC Claims). *United States v. Frady*, 456 U.S. 152, 167–68 (1982). And because Smith's substantive claims are also IAC claims, the test for determining whether the errors that form the basis of those claims caused him prejudice mirrors the prejudice prong of the *Strickland* test. *See id.* at 169 (noting that prejudice for purposes of cause-and-prejudice analysis depends on type

13

of claim at issue; finding allegedly erroneous jury instructions caused no prejudice); *Banks v. Reynolds*, 54 F.3d 1508, 1516 (10th Cir. 1995) (treating prejudice prong of *Strickland* test as equivalent to prejudice prong of cause-and-prejudice analysis); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering prejudice prong of underlying constitutional violation as coextensive with prejudice prong of cause-and-prejudice standard). That is, Smith must show (for both the First and Second IAC Claims) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. We consider each claim in turn.

In the First IAC Claim, Smith alleges that his first attorney deficiently failed to convey a 20-year plea offer to him. *See Frye*, 566 U.S. at 145 (noting that counsel performs deficiently if he or she fails to fulfill "duty to communicate formal [plea] offers from the prosecution").[3] In this context, prejudice results from such deficient performance if there's a reasonable probability that, but for counsel's failure to convey the offer, (1) the defendant would have accepted it; (2) the state would not have withdrawn or cancelled the offer; (3) the court would have accepted the plea; and (4) the plea would have led to a more favorable result for the defendant. *See id.* at 147.

---

[3] At this stage of the proceedings and in the context of the prejudice prong of the cause-and-prejudice analysis, we assume Smith's factual allegations are true. *See Williams*, 323 U.S. at 473–74 (noting that when lower court denies habeas petition "without giving petitioner an opportunity to prove his allegations," appellate court "must assume that the allegations of the petition are true").

Here, Smith satisfies these four requirements. As an initial matter, although he rejected the 25-year offer that his first attorney conveyed to him, he explained in his brief in support of his § 2254 petition that he would have accepted a 20-year offer because "[a] 20[-]year sentence would have allowed [him] to make [p]arole in time to attend his son's graduation." R. 42. Further, there's nothing in the record to indicate the state would have withdrawn or canceled the offer. Likewise, we see nothing in the record to suggest that the sentencing court wouldn't have accepted such a plea. Finally, a 20-year sentence is obviously more favorable than the 30-year sentence Smith received. Thus, Smith has established a reasonable probability that had his first attorney conveyed the 20-year plea offer to him, the result of the proceeding would have been different. *See Frye*, 566 U.S. at 147. We therefore conclude that for the First IAC Claim, Smith has established both cause and prejudice to excuse any procedural default.

The same is true for Smith's Second IAC Claim. In that claim, Smith alleges that his second attorney deficiently failed to alert the sentencing court to the first attorney's failure to convey the 20-year plea to Smith. Assuming the truth of this deficient-performance assertion, the Second IAC Claim likewise resulted in prejudice to Smith. *See Williams*, 323 U.S. at 473–74. That's because if the second attorney had alerted the sentencing court to the alleged error, there's a reasonable probability that the sentencing court would have remedied the error of Smith's first attorney by sentencing Smith to 20 years. *Cf. Jiminez v. State*, 144 P.3d 903, 907 (Okla. Crim. App. 2006) (remedying attorney's failure to timely communicate plea offer by

15

modifying defendant's sentence to match lapsed offer). Thus, we conclude that Smith has shown cause and prejudice to excuse any procedural default of the Second IAC Claim.

## II.     Evidentiary Hearing

Because Smith has established cause and prejudice sufficient to overcome any procedural default, a "federal habeas court will consider the merits of" the First and Second IAC Claims. *Edwards*, 529 U.S. at 451. But we will not be that court. Instead, we agree with Smith that a critical factual conflict exists in the record that requires us to remand for an evidentiary hearing. *Cf. Milton v. Miller*, 744 F.3d 660, 673 (10th Cir. 2014) (remanding for evidentiary hearing because "disputed issues of fact exist[ed] that preclude[d] us from completing our own de novo review" of petitioner's IAC claim). The state agrees that if we find a conflict in the record, remand is the proper remedy. But it argues that there isn't a conflict and that the record clearly establishes Smith isn't entitled to relief on either the First or Second IAC Claims. For the reasons explained below, we reject the state's contention that the record is clear, and we remand for an evidentiary hearing.

The state argues the record clearly demonstrates that the prosecution never offered Smith a 20-year plea deal—and as such, any IAC claim premised on Smith's first attorney not conveying a 20-year offer to Smith necessarily fails. We disagree with the state's interpretation of the record. Most obviously, the record shows that the prosecutor told the trial court that the state offered Smith a 20-year plea deal. The state concedes that the record "irrefutabl[y]" shows the prosecutor referenced a 20-

16

year plea deal. Aplee. Br. 38. But it insists the prosecutor qualified that statement with a "clarif[ying]" phrase—i.e., "if I remember correctly"—and thus introduced some ambiguity into the matter. *Id.* (quoting R. 90). But the state takes the prosecutor's qualification out of context. In informing the trial court about the earlier plea deal, the prosecutor said it "was 20 years, *and, if I remember correctly*, a dismissal against [Smith's] co-defendant." R. 90 (emphasis added). Given the phrasing of this statement, the clearest interpretation is that the prosecutor meant to question his memory of the offer's second component—the dismissal against Smith's codefendant—and not the length of the sentence the state offered to recommend.

Further, the state's assertion that the record clearly shows the state never offered Smith a 20-year deal ignores what Smith's second attorney said to the sentencing court: she agreed that the prosecutor's description of the 20-year offer "at least coincide[d] with [her] memory." *Id.* Likewise, the state's position ignores Smith's allegation that his second attorney told him that the state's 20-year offer had lapsed. Yes, the state points to a letter from Smith's first attorney in which he says the state only offered Smith a 25-year sentence, which Smith rejected. But at best, this letter creates a conflict in the record about whether the state offered Smith a 20-year sentence or a 25-year sentence; it doesn't conclusively establish that no 20-year offer existed.

Indeed, we find that the record reasonably suggests at least three possibilities: (1) the state offered Smith a 25-year sentence, which Smith rejected, and then the state offered Smith a 20-year sentence, which Smith's first attorney failed to

17

communicate to him; (2) the state offered Smith a 20-year sentence, but Smith's first attorney mistakenly told Smith the state offered him a 25-year sentence; or (3) the state only offered Smith a 25-year sentence, which Smith's first attorney properly communicated to Smith. Only an evidentiary hearing can resolve what actually occurred. Because the merits of both the First and Second IAC Claims hinge on that resolution, we remand for an evidentiary hearing.

**Conclusion**

We find that the Third IAC Claim has merit and establishes cause to overcome any procedural default of the First and Second IAC Claims. The district court erred in concluding otherwise. Further, at this stage of the proceedings, Smith has established prejudice resulting from the constitutional violations he alleges in the First and Second IAC Claims. *See Davila*, 137 S. Ct. at 2065. We therefore conclude that Smith has shown both cause and prejudice to overcome any procedural default of those two claims. But because unresolved factual issues preclude us from resolving the merits of these claims, we reverse and remand to the district court with directions to conduct an evidentiary hearing and to subsequently review the First and Second IAC Claims on the merits.