**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**March 11, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

ANTHONY CHARLES MURPHY,

    Petitioner - Appellant,

v.

WARDEN ROBERT POWELL,

    Respondent - Appellee.

No. 23-4118
(D.C. No. 1:21-CV-00097-RJS)
(D. Utah)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **PHILLIPS**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

Anthony Murphy, a Utah state inmate proceeding pro se, seeks a

Certificate of Appealability (COA) to appeal the district court's denial of his

28 U.S.C. § 2254 petition. He also requests to proceed in forma pauperis (IFP).

For the reasons explained below, we deny Murphy a COA but grant his IFP

motion.

**BACKGROUND**

In 2016, Murphy was convicted of four felonies for sexually assaulting

his then-wife: (1) aggravated sexual assault, (2) aggravated kidnapping,

---

[*] This order is not binding precedent except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(3) forcible sexual abuse, and (4) aggravated assault. On the aggravated-sexual-assault and aggravated-kidnapping convictions, he was sentenced to consecutive terms of 15 years' to life imprisonment. For his other two convictions, he was sentenced to concurrent terms of 1-to-15 years' imprisonment and zero-to-5 years' imprisonment.

Murphy appealed his conviction to the Utah Court of Appeals. In his appeal, Murphy raised five state-law claims, including a challenge to prior-sexual-assault evidence admitted under Utah Rules of Evidence 403 and 404(b).[1] He also raised one federal claim—ineffective assistance of trial counsel. The Utah Court of Appeals ruled that Murphy had waived three of his state-law claims by failing to preserve them and failing to brief his arguments under any "exceptions to the preservation rule," such as plain error. *State v. Murphy*, 441 P.3d 787, 792–93 (Utah Ct. App. 2019). As for his ineffective-assistance-of-counsel claim, the court declined to decide whether Murphy's trial counsel's performance was deficient because Murphy had failed to show prejudice. *Id.* at 800 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In all, the court affirmed his convictions, rejecting his two preserved state-law claims. *Id.*

---

[1] His four other state-law claims alleged (1) prosecutorial misconduct during closing arguments, (2) wrongful denial of his motion for a mistrial, (3) wrongful failure to merge the aggravated-kidnapping charge and the aggravated-sexual-assault charge, and (4) insufficiency of the evidence.

From there, Murphy petitioned the Utah Supreme Court for certiorari. In his petition, Murphy raised a state-law claim only: he challenged the admission of prior-sexual-assault evidence under Utah Rule of Evidence 403. The Utah Supreme Court denied certiorari. *State v. Murphy*, 466 P.3d 1074 (Utah 2020) (table).

Murphy then filed a pro se petition for postconviction relief in Utah state court, cabining his arguments to five legal theories: (1) insufficient evidence in support of the convicted crimes, (2) prosecutorial misconduct, (3) violation of Utah Rule of Evidence 702, (4) violations of Fourth and Fourteenth Amendments, and (5) ineffective assistance of trial and appellate counsel. In November 2020, the state court "summarily dismissed" Murphy's first four claims, finding them "frivolous on their face." R. 641–42. The court concluded that Murphy's ineffective-assistance claims were full of "pleading errors," so the court granted Murphy twenty-one days to amend his petition. R. 642. Before the twenty-one days expired, Murphy successfully moved for an extension because he had contracted COVID-19. Murphy timely amended his petition and added more ineffective-assistance claims, bringing his total to twenty-two of such claims. On March 1, 2021, the court dismissed the remaining claims, finding the claims barred for a variety of reasons. Some were barred because Murphy had failed to raise them on direct appeal; some were barred because they had been adjudicated on the merits; and some were frivolous on their face.

3

Rather than appealing this dismissal, on May 2, 2021, Murphy petitioned for federal habeas relief under 28 U.S.C. § 2254.[2] In his federal petition, Murphy asserts eight claims: (1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel, (3) admission of evidence obtained from an illegal warrantless search, (4) prosecutorial misconduct, (5) *Brady* violations, (6) insufficiency of the evidence, (7) a Fourteenth Amendment violation by the Utah Court of Appeals, and (8) the admission of evidence in violation of the Ex Post Facto Clause. Before the district court, Murphy argued that he had cause to excuse his failure to appeal the denial of his state-postconviction petition: he claimed that he missed the deadline because he had emergency heart surgery. According to Murphy, he was admitted for surgery on March 5, 2021, and remained hospitalized until March 26, 2021. Murphy asserts that, after he left the hospital, he was placed in the prison's infirmary until March 28. The district court concluded that Murphy had procedurally defaulted his claims by failing to appeal any federal issues to the Utah Supreme Court. *Murphy v. Utah*, No. 21-CV-97, 2023 WL 4934268, at *6–7 (D. Utah Aug. 2, 2023).

---

[2] Murphy mailed his § 2254 petition on May 2, 2021, but for some reason it was returned to him. He remailed it on June 28, 2021, and the petition arrived at the district court on July 1, 2021.

**STANDARD OF REVIEW**

Murphy must obtain a COA to appeal the district court's order. *See* 28 U.S.C. § 2253(c)(1)(A). To do so, Murphy must show that "jurists of reason would find it debatable" (1) "whether the petition states a valid claim of the denial of a constitutional right" and (2) "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**DISCUSSION**

We first determine whether Murphy is entitled to a COA, and then we address his motion to proceed IFP.

**I.     COA Application**

The district court denied Murphy's habeas petition because he had neither exhausted his state-court remedies nor shown cause to excuse his default. *Murphy*, 2023 WL 4934268, at *6–7. On appeal, Murphy claims that he did in fact exhaust his remedies and, in the alternative, that he has shown cause to excuse a procedural default. We first consider whether Murphy exhausted his state remedies and then turn to any exceptions that may apply.

A state petitioner seeking federal habeas relief must first exhaust his state remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This exhaustion requirement, codified at 28 U.S.C. § 2254(b)(1)(A), ensures that "state courts [have] the opportunity to resolve state cases in the first instance before federal courts . . . intrude." *Ellis v. Raemisch*, 872 F.3d 1064, 1081 (10th Cir. 2017) (citing *O'Sullivan*, 526 U.S. at 844); *see also O'Sullivan*, 526 U.S. at

5

845 (explaining that "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts"). To exhaust his state remedies, a petitioner must invoke the federal issue through "one complete round of the State's established appellate review process." *Simpson v. Carpenter*, 912 F.3d 542, 565 (10th Cir. 2018) (citation omitted). And the petitioner must raise the federal issue "in a manner sufficient to put the courts on notice of the federal constitutional claim." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (citing *Picard v. Connor*, 404 U.S. 270, 278 (1971)).

When a petitioner has failed to exhaust his state remedies, we sometimes dismiss those unexhausted claims without prejudice so that the "petitioner can pursue available state-court remedies." *Grant v. Royal*, 886 F.3d 874, 891–92 (10th Cir. 2018) (citations omitted). But "dismissal without prejudice . . . is not appropriate if the state court would now find the claims procedurally barred" and refuse to hear them. *Id.* at 892 (citations omitted); *see also Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." (citation omitted)). When a state court would deem those claims barred under state law, we treat them as "procedural[ly] default[ed] for the purposes of federal habeas review." *Grant*,

6

886 F.3d at 892 (citations omitted). The procedural default carries a heavy burden—we will consider the claims only if the petitioner can show "cause and prejudice or a fundamental miscarriage of justice." *Tryon v. Quick*, 81 F.4th 1110, 1139 (10th Cir. 2023) (citation omitted). To show cause, a petitioner must demonstrate that "something *external* to the petitioner, something that cannot be fairly attributed to him, impeded his efforts to comply with the State's procedural rule." *Id.* (quoting *Maples v. Thomas*, 565 U.S. 266, 280 (2012)). Then to show prejudice, the petitioner must establish "not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage." *Shinn v. Ramirez*, 596 U.S. 366, 379–80 (2022) (cleaned up). And to establish a fundamental miscarriage of justice, a petitioner must make a credible claim of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). The actual-innocence exception "is a markedly narrow one" that is "implicated only in extraordinary cases where a constitutional violation has probably resulted in the conviction of someone who is actually innocent." *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (cleaned up).

Murphy has failed to properly exhaust his state remedies because he never invoked any of his federal claims through "one complete round of [Utah's] established appellate review process." *Simpson*, 912 F.3d at 565 (citation omitted). In his direct appeal to the Utah Court of Appeals, Murphy presented one federal claim—ineffective assistance of trial counsel. But when

Murphy petitioned the Utah Supreme Court for review, he declined to present any federal issues and instead brought a state-law claim only. Though the Utah Supreme Court exercises discretionary review, it is part of Utah's "established appellate review process." *Id.* (citation omitted); *see* Utah R. App. P. 45 ("[T]he review of a judgment . . . of the Court of Appeals shall be initiated by filing in the Utah Supreme Court a petition for a writ of certiorari to the Utah Court of Appeals."). Thus, Murphy exhausted none of his federal claims on direct review.

Though Murphy failed to fully appeal the denial of his state-postconviction petition, he argues that he nonetheless exhausted his state remedies. In support, he claims that he was under no duty to appeal because Utah Rule of Civil Procedure 65C(q) provides that he "may" appeal. But Murphy's duty to exhaust—and thus to appeal the postconviction denial—arises from federal law, not Utah law. *See* 28 U.S.C. § 2254(b)(1)(A) (requiring a petitioner to have "exhausted [his] remedies available in the courts of the State"); *see also* § 2254(c) (noting that a petitioner has not exhausted his state remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented"). Because Rule 65C(q) gave Murphy the right to appeal the denial of his postconviction petition, § 2254(b)(1)(A) requires him to have exercised that appellate right. By failing to exercise his right to appeal, Murphy has not properly exhausted his state remedies.

8

Murphy cannot return to state court to assert his claims, so dismissal without prejudice is not appropriate. *See Grant*, 886 F.3d at 892. First, Murphy can no longer appeal the denial of his postconviction petition because the appellate deadline has expired. *See* Utah R. App. P. 4(a), (e). Second, Murphy cannot restart the process by bringing another state-postconviction petition. Utah bars prisoners from asserting claims in a postconviction petition that were "raised . . . or could have been, but [were] not, raised in a previous request for postconviction relief." Utah Code Ann. § 78B-9-106(1)(d). So Murphy has no avenue to present his claims to the Utah Supreme Court. Thus, his claims are procedurally defaulted, and we will consider them only if he can show cause and prejudice, or a fundamental miscarriage of justice. *See Grant*, 886 F.3d at 892.

Murphy has not shown cause and prejudice to excuse his procedural default. Construing his brief liberally, we understand Murphy to assert that his emergency surgery prevented him from appealing his postconviction ruling. Even if a health emergency qualifies as "something *external*" to Murphy, see *Tryon*, 81 F.4th at 1139, he has failed to show that his surgery prevented him from complying with Utah's appellate rules. The state trial court denied Murphy's petition on March 1, 2021, so Murphy had thirty days to appeal the ruling. *See* Utah R. App. P. 4(a). But after the appellate deadline passed on March 31, 2021, Murphy still had another thirty days to file a motion to "extend the time for filing a notice of appeal"—giving Murphy until April 30,

9

2021. *See id.* R. 4(e)(2). Utah courts grant these motions when a party shows "good cause or excusable neglect," *id.*, and in assessing these motions, courts engage in an "inquiry [that] is fundamentally equitable in nature and entails broad discretion," *Reisbeck v. HCA Health Servs. of Utah, Inc.*, 2 P.3d 447, 450 (Utah 2000). Murphy contends that he did not return to his prison unit from surgery until March 29, 2021, and that he did not receive the trial court's denial until "sometime after" April 1, 2021. Op. Br. at 4. But rather than filing a motion to extend the time to appeal, Murphy waited until May 2, 2021—two days after the appellate-extension deadline passed—to mail his § 2254 petition. And by failing to seek an appellate extension, Murphy abandoned a state procedure to pursue his claims. *See Ward v. Medina*, 502 F. App'x 780, 782–83 (10th Cir. 2012) (unpublished) (ruling that state prisoner failed to exhaust state remedies when he didn't move to file a late appeal). As a result, Murphy has not shown cause to excuse his failure to seek an appellate extension, and we cannot excuse his procedural default.

Murphy has not argued that he is actually innocent, and so he has not shown a fundamental miscarriage of justice. *See Magar*, 490 F.3d at 820. Thus, reasonable jurists would not debate the district court's procedural ruling, and we deny Murphy a COA.

## II.    IFP Motion

Murphy also requests to proceed IFP. We grant IFP motions when appellants show (1) "a financial inability to pay the required filing fees" and

10

(2) "the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991) (citations omitted). Murphy has shown an inability to pay through his financial affidavit. And Murphy has presented a nonfrivolous argument on appeal. For these reasons, we grant his IFP motion. IFP status allows Murphy to avoid paying the appellate-filing fee upfront, but he must continue to make partial payments until he pays the fee in full. *See* 28 U.S.C. § 1915(b).

## CONCLUSION

For the reasons discussed above, we deny Murphy a COA, grant his IFP motion, and order the matter dismissed.

Entered for the Court

Gregory A. Phillips
Circuit Judge