**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 23, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

DALE W. EATON,

     Petitioner - Appellant,

v.

MIKE PACHECO, Warden, Wyoming
Department of Corrections State
Penitentiary,

     Respondent - Appellee.

Nos. 15-8013 & 16-8086

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:09-CV-00261-ABJ)**
_____

Sean D. O'Brien, Kansas City, Missouri (Lindsay J. Runnels, Kansas City, Missouri, and Terry J. Harris, Harris & Harris, P.C., Cheyenne, Wyoming, with him on the briefs), for Petitioner-Appellant.

Katherine A. Adams, Assistant Attorney General (Peter K. Michael, Attorney General, Christyne M. Martens, Deputy Attorney General, and Benjamin E. Fisher, Assistant Attorney General, with her on the briefs), Cheyenne, Wyoming, for Respondent-Appellee.
_____

Before **HARTZ**, **MORITZ**, and **EID**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

More than a decade after the crimes occurred, Dale Eaton was tried for and convicted of the kidnapping, sexual assault, robbery, and murder of Lisa Kimmell. A Wyoming jury sentenced him to death, and he later sought federal habeas relief from his convictions and death sentence. The federal district court agreed that Eaton was entitled to partial relief and vacated his death sentence. But the district court refused to disturb Eaton's underlying convictions. And it also refused to bar the state from conducting new death-penalty proceedings.

On appeal, Eaton argues the district court erred in (1) denying relief on the constitutional claims that implicate his convictions; (2) refusing to modify the conditional writ to bar the state from conducting new death-penalty proceedings; and (3) subsequently concluding that the state didn't waive its right to pursue new death-penalty proceedings by failing to timely comply with the conditional writ's requirements. We reject these arguments and affirm the district court's orders.

## Background

On March 25, 1988, Kimmell set out from Colorado and headed north towards Montana. She never reached her destination. Instead, a fisherman found her body a week later in the water near Government Bridge in Natrona County, Wyoming. An autopsy indicated that Kimmell bled to death as the result of multiple stab wounds to her chest—wounds that were inflicted shortly after she suffered what would have otherwise been a fatal blow to the head. Investigators also found semen in Kimmell's vagina and on her underwear.

Kimmell's 1988 murder went unsolved for over a decade. But in 2002, a DNA hit from the semen implicated Eaton.[1] Investigators later found Kimmell's car buried on Eaton's property. Wyoming then charged him with various offenses, including first-degree murder.

Although there was some question as to Eaton's mental health, Eaton's trial counsel insisted that Eaton was competent and showed "no interest" in pursuing a defense based on mental disease or defect. *Eaton*, 192 P.3d at 55–56. Thus, although the trial court expressed concern about Eaton's apparent "memory problems" and his potential "inability to assist [in] his defense," the matter proceeded to trial in 2004. *Id.* at 55.

At trial, the government relied in part on the testimony of Joseph Dax to prove its case. Dax testified that Eaton confessed to Kimmell's murder while the two men were incarcerated together at the Natrona County Jail. *Id.* at 51. According to Dax, Eaton said that Kimmell agreed to give him a ride; Eaton then "made a pass at" Kimmell; Kimmell "became angry and stopped her car and ordered him to get out"; and Eaton "instead grabbed her and sexually assaulted her." *Id.* at 76. When the

---

[1] More specifically, law enforcement submitted certain physical evidence to Cellmark Diagnostics for additional DNA testing in 2000. Cellmark Diagnostics then entered the results of that testing into the Combined DNA Index System (CODIS). Eaton's DNA profile—which was on file with CODIS as the result of an unrelated felony conviction—"matched" the DNA profile that Cellmark Diagnostics derived from the additional testing. Thus, entering the results of that additional testing into CODIS yielded a "hit," App. vol. 7, 429, which ultimately "led the authorities to Eaton," *Eaton v. State*, 192 P.3d 36, 51 (Wyo. 2008).

prosecutor asked Dax how he knew that Eaton indeed had sexual contact with Kimmell, Dax replied that Eaton told him Kimmell "was 'a lousy lay.'" *Id.*

The jury found Eaton guilty of first-degree premeditated murder, felony murder, aggravated kidnapping, first-degree sexual assault, and aggravated robbery. At sentencing, Eaton confessed, via the testimony of his examining physician, to killing Kimmell. According to Eaton's physician, Eaton admitted that he found Kimmell's car parked on his land, pulled her from her car at gunpoint, and "ended up raping and killing her after keeping her on his property for several days so that he would not be alone at Easter." *Id.* at 52.

Based on this and other evidence presented during the guilt phase and at sentencing, the jury concluded that the state proved multiple aggravating circumstances beyond a reasonable doubt.[2] And after finding that no mitigating circumstances existed, it voted to impose the death penalty.

Eaton then appealed to the Wyoming Supreme Court (WSC). As relevant here, Eaton asserted on direct appeal that he received ineffective assistance of counsel (IAC) during both the guilt phase and the sentencing phase of his trial. Specifically, he argued trial counsel provided IAC during the guilt phase (by allegedly failing to

---

[2] The jury determined that Eaton (1) had a previous conviction for "a felony involving the use or threat of violence to [a] person"; (2) murdered Kimmell in a manner that "was especially atrocious or cruel, being unnecessarily torturous to [Kimmell]"; (3) "killed [Kimmell] purposely and with premeditated malice and while engaged in a[] robbery"; (4) "killed [Kimmell] purposely and with premeditated malice and while engaged in a[] sexual assault"; and (5) "killed [Kimmell] purposely and with premeditated malice and while engaged in a[] kidnapping." App. vol. 1, 469–70.

recognize and argue that Eaton was incompetent to stand trial) and during the sentencing phase (by allegedly failing to investigate and present mitigating evidence). To that end, Eaton requested a partial remand to the trial court for an evidentiary hearing on his IAC claims under *Calene v. State*, 846 P.2d 679 (Wyo. 1993).[3] Finally, Eaton argued that the trial court erred when it allowed Dax to testify that Eaton said Kimmell "was 'a lousy lay.'" *See Eaton*, 192 P.3d at 76–77.

The WSC granted Eaton's *Calene* motion, stayed the appeal, and remanded the matter to the trial court with directions to conduct a *Calene* hearing and to issue a ruling within 90 days. Eaton objected to the 90-day deadline and asked both the trial court and the WSC for additional time to investigate. Both courts denied these requests for more time. The trial court then conducted an evidentiary hearing, after which it concluded that trial counsel wasn't ineffective during either the guilt phase or the sentencing phase of Eaton's trial. The appeal was then argued to the WSC, which agreed with the trial court's findings on remand and rejected Eaton's IAC claims. The WSC also rejected Eaton's argument that the trial court abused its discretion in admitting Dax's statement. The WSC then affirmed Eaton's convictions and his death sentence.

After Eaton's subsequent efforts to obtain postconviction relief in state court proved unsuccessful, he filed a 28 U.S.C. § 2254 motion in federal district court.

---

[3] Under *Calene*, a defendant should request such a remand when "contentions of ineffectiveness are first developed by appellate counsel during record examination and [preparation for] appellate briefing." 846 P.2d at 692.

Under amendments made to § 2254 by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, a federal court may "entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a [s]tate court . . . on the ground that [the petitioner] is in custody in violation of the Constitution." § 2254(a). But before a federal court may grant relief to such a petitioner "with respect to any claim" that a state court has already "adjudicated on the merits," the petitioner must demonstrate that the state court's "adjudication of the claim" either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate[-]court proceeding." § 2254(d).

Here, Eaton's § 2254 motion alleged that trial counsel provided ineffective assistance during the guilt phase of Eaton's trial by allowing Eaton to be tried while incompetent (the guilt-phase IAC claim); that trial counsel provided ineffective assistance during the sentencing phase of Eaton's trial by failing to adequately investigate and present mitigating evidence (the sentencing-phase IAC claim); that appellate counsel provided ineffective assistance during Eaton's direct appeal by failing to investigate and present—to either the trial court during the *Calene* remand or subsequently to the WSC—the mitigating evidence that trial counsel should have presented at sentencing (the appeal-phase IAC claim); and that the state committed a

6

*Brady* violation[4] by failing to disclose the full extent of its relationship with Dax (the *Brady* claim).

The district court first denied relief on the *Brady* claim. In doing so, it determined that the claim was procedurally defaulted because Eaton failed to present it in state court. And because the district court found there was no reasonable likelihood that Dax's testimony affected either the verdict or the sentence, it ruled that Eaton couldn't satisfy the cause-and-prejudice exception to the procedural-default rule.[5]

Next, the district court addressed the guilt-phase IAC claim. The district court initially noted that in advancing this claim, Eaton relied heavily on new evidence of his incompetence to stand trial—i.e., evidence of incompetence that Eaton never presented to the WSC. And the district court further noted that the WSC "addressed the merits of" the guilt-phase IAC claim in Eaton's direct appeal. App. vol. 13, 909. Thus, the district court refused to consider Eaton's new evidence in evaluating whether Eaton could satisfy § 2254(d).[6] And in light of the evidence that Eaton *did*

---

[4] "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[5] Federal habeas courts are typically barred from considering procedurally defaulted claims unless a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[6] Review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012) (extending *Pinholster*'s rule to § 2254(d)(2)).

present to the WSC, the district court concluded that the WSC's decision rejecting the guilt-phase IAC claim wasn't "contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts" then before the WSC. App. vol. 13, 911; *see also* § 2254(d). Thus, the district court denied Eaton relief on the guilt-phase IAC claim.

The district court then turned to the sentencing-phase IAC claim. The district court agreed with Eaton that the WSC's rejection of the sentencing-phase IAC claim was "based on an unreasonable determination of the facts in light of the evidence" that was before the WSC when it adjudicated this claim, thus satisfying § 2254(d)(2). App. vol. 13, 902. More specifically, the district court concluded that Eaton's appellate counsel had insufficient time in which to prepare for the *Calene* remand hearing, and thus Eaton lacked "an adequate opportunity to present [the sentencing-phase IAC claim] before the state courts." *Id.* at 901. And it reasoned that because it was "arbitrary and unreasonable for the state courts to acknowledge the critical importance of [the] facts supporting" the sentencing-phase IAC claim "while simultaneously denying [Eaton] the necessary means of discovering" those same facts, Eaton could satisfy § 2254(d)(2). *Id.*

Accordingly, the district court ruled that in determining whether Eaton was entitled to habeas relief on the sentencing-phase IAC claim, it could consider new mitigation evidence—i.e., mitigation evidence that Eaton never presented to the WSC

8

but instead presented for the first time during the federal habeas proceedings.[7] And in light of Eaton's new mitigation evidence, the district court concluded that trial counsel was indeed ineffective at sentencing because (1) trial counsel's "preparation for the penalty phase of [Eaton's] trial" was deficient; and (2) there was a reasonable probability that, but for trial counsel's deficient performance, the jury would have spared Eaton's life. App. vol. 18, 713.

Finally, the district court addressed the appeal-phase IAC claim and reasoned that Eaton's new mitigation evidence compelled the same conclusion.[8] That is, the district court determined that (1) appellate counsel performed deficiently during the *Calene* remand and on appeal by failing to discover and present in state court the mitigation evidence that trial counsel should have discovered and presented to the jury, and (2) appellate counsel's deficient performance prejudiced Eaton.

As a result of its rulings on the sentencing-phase and appeal-phase IAC claims, the district court vacated Eaton's death sentence on November 20, 2014. But in doing so, it issued a conditional writ: it gave the state 120 days in which to pursue "a new sentencing proceeding" if it opted to do so. *Id.* at 963; *see also Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (noting that in addition to ordering petitioner's immediate

---

[7] Relying on Justice Breyer's separate opinion in *Pinholster*, we have previously indicated that once a petitioner satisfies § 2254(d)(1), a federal habeas court may then consider new evidence in determining whether the petitioner is entitled to habeas relief. *See Milton v. Miller*, 744 F.3d 660, 673 (10th Cir. 2014) (citing *Pinholster*, 563 U.S. at 205 (Breyer, J., concurring in part and dissenting in part)).

[8] For reasons not relevant to this appeal, the district court concluded that it could also consider Eaton's new evidence in evaluating the appeal-phase IAC claim.

release, "federal courts may delay the release of a successful habeas petitioner in order to provide the [s]tate an opportunity to correct the constitutional violation found by the court"). The district court also ordered the state to "promptly appoint[] experienced death[-]penalty counsel . . . to represent [Eaton] in any further [state-court] proceedings." App. vol. 18, 964. Finally, the district court ruled that if the state decided "not to grant [Eaton] a new sentencing proceeding," Eaton would automatically receive "a sentence of life without parole."[9] *Id.*

Eaton then filed a motion to amend the judgment under Federal Rule of Civil Procedure 59(e). In that motion, Eaton asked the district court to make its conditional writ an unconditional one. In other words, Eaton asked the district court to "modify its judgment to prohibit" the state from "attempt[ing] to resentence [him] to death." *Id.* at 967. In support, Eaton argued that the underlying Sixth Amendment violation—i.e., trial counsel's ineffective assistance during the sentencing phase—could not "be cured by" a new sentencing proceeding "in light of the number of mitigation witnesses who have died or otherwise become unavailable since [Eaton's] original trial." *Id.*

The district court denied Eaton's Rule 59(e) motion. In doing so, it pointed out that Eaton could present any "issues associated with a resentencing," including his arguments about "the availability of mitigation witnesses," to Wyoming's state courts. *Id.* at 1824. More specifically, the district court reasoned that "under the

---

[9] The State didn't appeal any aspect of the district court's order granting Eaton a conditional writ.

notion of 'comity,'" such issues would be "best resolved by the state[-]court system if" the state indeed opted to pursue resentencing. *Id.* at 1825 (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971)).

Eaton filed a notice of appeal on March 16, 2015. On April 6, 2015, the district court granted him a certificate of appealability (COA). *See* 28 U.S.C. § 2253(c)(1)(A). In relevant part, that COA granted Eaton permission to appeal the district court's orders (1) rejecting the guilt-phase IAC claim; (2) rejecting the *Brady* claim; and (3) denying Eaton's Rule 59(e) motion. Notably, in granting Eaton a COA to appeal its ruling on the *Brady* claim, the district court narrowed the scope of that COA to the question of whether the state's alleged act of "withholding information about its relationship with" Dax "was material to the question of punishment." App. vol. 18, 2125. In other words, the district court granted Eaton a COA to appeal its resolution of the *Brady* claim, but only to the extent that claim arises from the *sentencing* phase of Eaton's trial; the district court did not authorize Eaton to appeal its resolution of the *Brady* claim to the extent that claim arises from the *guilt* phase of Eaton's trial.

We docketed Eaton's initial appeal as Appeal No. 15-8013. But before we could set a briefing schedule for that appeal, the conditional writ's 120-day deadline expired. As a result, we directed a limited remand to the district court "to determine whether the [state] ha[d] complied with the terms of [the district court's] conditional grant of habeas relief and, if not, whether the result of that noncompliance [was] the waiver of [the state's] right to hold a new death[-]penalty proceeding." *Id.* at 2144.

11

On remand, the district court determined that the state had indeed failed to comply with the terms of the conditional writ. But the district court nevertheless ruled that the state's noncompliance didn't result in a waiver of its ability to pursue new death-penalty proceedings. Notably, in reaching that conclusion, the district court relied in part on the fact that Eaton himself had filed with the state trial court a notice in which he argued that, in light of the ongoing proceedings in federal court, it would be "premature . . . to initiate *any* further state[-]court proceedings." App. vol. 19, 27.

Eaton then filed a new notice of appeal in which he challenged the district court's order on remand. We separately docketed that appeal as Appeal No. 16-8086 and then consolidated Eaton's appeals for procedural purposes.

## Analysis

In these consolidated appeals, Eaton advances four general arguments. He asserts that (1) the district court erred in denying relief on the guilt-phase IAC claim; (2) the district court abused its discretion in denying his Rule 59(e) motion; (3) the district court abused its discretion in ruling that the state may conduct new death-penalty proceedings despite its failure to comply with the terms of the conditional writ; and (4) the district court erred in denying relief on the *Brady* claim. We address each of these arguments in turn.

## I.     The Guilt-Phase IAC Claim

At the heart of the guilt-phase IAC claim is Eaton's assertion that he was incompetent to stand trial. And in attempting to demonstrate as much in district court,

Eaton relied on new evidence. That is, he relied on evidence of his incompetence that he never presented to the WSC.

The district court refused to consider this new evidence as it related to this particular claim, ruling the court was instead "limited to" the state-court record. App. vol. 13, 909. According to Eaton, this was error. He asserts that nothing "prevented the district court from considering" his new evidence in evaluating the guilt-phase IAC claim.[10] Aplt. Br. 90. The state disagrees. It maintains that in determining whether Eaton is entitled to relief on the guilt-phase IAC claim, "the district court correctly limited its . . . review to" the state-court record. Aplee. Br. 81.

Because our resolution of these arguments turns on the applicable standard of review, we begin our discussion there. To the extent the district court denied relief on the guilt-phase IAC claim, no one disputes that we review its decision de novo. That is, we afford no deference to the district court's legal analysis. *See Bonney v. Wilson*, 817 F.3d 703, 711 (10th Cir. 2016). But we must also determine the quantum of deference that we owe—and that the district court owed—to the WSC's analysis of this claim. For its part, the state argues that the WSC's adjudication of Eaton's claim is "subject to the highly deferential standards of" § 2254(d). Aplee. Br. 78. Eaton, on the other hand, insists that the WSC's decision is entitled to no such deference.

---

[10] Eaton likewise relies on this new evidence in asserting on appeal that he is entitled to relief on the guilt-phase IAC claim. In fact, as the state points out, Eaton doesn't even attempt to argue in his opening brief that he is entitled to relief on the guilt-phase IAC claim "based on the state[-] court record [alone]." Aplee. Br. 83.

The parties' disagreement on this point stems from the language of § 2254(d) itself. In relevant part, that language allows a federal habeas court to grant relief to a state prisoner "with respect to a[] claim that" a state court has already "adjudicated on the merits"—but only under the narrowest of circumstances. § 2254(d). Specifically, a federal habeas court cannot grant relief on such a claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate[-]court proceeding." § 2254(d)(1)–(2).

As this language suggests, and as we note above, a federal court's review of a state court's decision under § 2254(d) is exceedingly deferential. *See Fairchild v. Trammell*, 784 F.3d 702, 710 (10th Cir. 2015) (explaining that § 2254(d) requires us to give such state-court decisions "the benefit of the doubt" (quoting *Pinholster*, 563 U.S. at 181)). For instance, to satisfy § 2254(d)(1)'s unreasonable-application prong, a petitioner must do more than merely establish that the state court's adjudication of his or her constitutional claim was wrong. *See Williams v. Taylor*, 529 U.S. 362, 410 (2000) ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."). Instead, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

14

Similarly, "that we think a state court's factual determination was incorrect—or, put differently, that we would have made a different determination ourselves in the first instance—does not render the state court's determination objectively unreasonable" for purposes of § 2254(d)(2). *Smith v. Aldridge*, 904 F.3d 874, 880 (10th Cir. 2018). Instead, "a factual determination only qualifies as unreasonable under § 2254(d)(2) if all '[r]easonable minds reviewing the record' would agree it was incorrect." *Id.* (alteration in original) (quoting *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015)).

Critically, in determining whether a petitioner has satisfied § 2254(d)'s rigorous requirements, a federal habeas court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181. In other words, "evidence introduced [for the first time] in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185; *see also Hooks*, 689 F.3d at 1163 (extending *Pinholster*'s pronouncement to § 2254(d)(2) review).

"If this standard" for obtaining federal habeas relief sounds "difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102. By requiring state prisoners to clear this high bar before obtaining federal relief, § 2254(d) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Id.* at 103.

15

But the concerns that animate § 2254(d), including "comity, finality, and federalism," don't apply with the same force when a state court declines to reach the merits of a particular constitutional claim. *Williams v. Taylor*, 529 U.S. 420, 436 (2000); *see also* Robert D. Sloane, *AEDPA's "Adjudication on the Merits" Requirement: Collateral Review, Federalism, and Comity*, 78 St. John's L. Rev. 615, 632 (2004) ("[I]f the state court did not adjudicate a federal claim on the merits, then comity applies differently or not at all."). Thus, "if the state court did not decide a claim on the merits, and the claim is not otherwise procedurally barred, we address the issue de novo and [§ 2254(d)'s] deference requirement does not apply." *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

Moreover—and again, critically for our purposes—because *Pinholster*'s "bar on new evidence is coterminous with the scope of § 2254(d)," our review of "a claim that was not adjudicated on the merits by the state courts" isn't "necessarily limited to the state record." *Stokley v. Ryan*, 659 F.3d 802, 808 (9th Cir. 2011); *see also Toliver v. Pollard*, 688 F.3d 853, 859 (7th Cir. 2012) ("*Pinholster* prohibits federal evidentiary hearings only on inquiries that are subject to [§ 2254(d)]—that is, inquiries that the state courts have addressed."). Thus, in analyzing such an unadjudicated claim, it may be possible for a federal court to consider evidence presented for the first time during federal habeas proceedings. *See Pinholster*, 563 U.S. at 205 (Breyer, J., concurring in part and dissenting in part); *Stokley*, 659 F.3d at 809.

As the foregoing discussion illustrates, our resolution of the parties' deference disagreement turns on whether the WSC adjudicated the guilt-phase IAC claim on the merits. If so, then Eaton must not only "overcome the limitation[s] of § 2254(d)[]"; he must do so based solely "on the record that was before" the WSC when it adjudicated the guilt-phase IAC claim. *Pinholster*, 563 U.S. at 185; *see also Hooks*, 689 F.3d at 1163. If not, then § 2254(d) deference doesn't apply; review is de novo; and *Pinholster* doesn't preclude Eaton from relying on evidence he presented for the first time during the federal habeas proceedings. *See Gipson*, 376 F.3d at 1196; *Stokley*, 659 F.3d at 808.

Here, the district court concluded that the WSC adjudicated the guilt-phase IAC claim on the merits. Thus, the district court determined that § 2254(d) applies to this claim and declined to consider new evidence that Eaton "submitted with [his federal] habeas petition." App. vol. 13, 909. Instead, the district court confined its review to "the record before" the WSC when it adjudicated the guilt-phase IAC claim. *Id.* And on that record, the district court concluded that Eaton couldn't satisfy § 2254(d).

Eaton advances three challenges to this ruling. First, he asserts that the WSC didn't *fully* adjudicate the merits of the guilt-phase IAC claim. Second, he argues that even if the WSC fully adjudicated the merits of this claim, "the cause-and-prejudice standard" operates to allow him to present new evidence. Aplt. Br. 86–87. Third, he maintains that he is "entitled to relief" on the guilt-phase IAC claim

17

"notwithstanding" § 2254(d). *Id.* at 87. We address and reject each of these arguments below.

### A.      The WSC's Resolution of the Guilt-Phase IAC Claim

Eaton doesn't dispute that the WSC generally considered and rejected the guilt-phase IAC claim. Instead, he points out that to succeed on this claim, he was required to make two distinct showings: (1) that trial counsel's performance was deficient, and (2) that trial counsel's deficient performance prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). And as Eaton points out, when a state court bypasses *Strickland*'s performance prong and resolves a petitioner's IAC claim based solely on *Strickland*'s prejudice prong, then § 2254(d) deference doesn't apply to the unadjudicated performance prong. *See Porter v. McCollum*, 558 U.S. 30, 39 (2009) ("Because the state court did not decide whether [petitioner's] counsel was deficient, we review this element of [petitioner's] *Strickland* claim de novo.").

According to Eaton, that's precisely what happened here. He asserts that in adjudicating the guilt-phase IAC claim, the WSC never addressed *Strickland*'s performance prong. Instead, he insists, the WSC rejected this claim based solely on its conclusion that Eaton couldn't establish prejudice. Thus, Eaton argues, the district court erred in reviewing the performance-prong aspect of this claim under § 2254(d). And he asserts that it therefore *also* erred in confining its review of that aspect of his claim to the evidence he presented to the WSC. *See Porter*, 558 U.S. at 39; *Toliver*, 688 F.3d at 859.

18

To support his assertion that the WSC bypassed *Strickland*'s performance prong and resolved the guilt-phase IAC claim based solely on the prejudice prong, Eaton relies on three aspects of the WSC's decision. First, he points to language in which the WSC stated, "[A]t this juncture we intend only to address the initial premise, i.e., that Eaton was not competent to stand trial." *Eaton*, 192 P.3d at 52. Second, he directs us to the WSC's statement that the "materials" before it didn't "suggest that Eaton was incompetent." *Id.* at 60. Third, Eaton cites the following passage from the WSC's opinion: "We have concluded that the record on appeal does not indicate that Eaton was not competent to be tried. Hence, we also conclude that [trial] counsel w[as] not ineffective for permitting the trial to go forward." *Id.* at 70.

According to Eaton, these three statements, when considered together, demonstrate that the WSC "addressed only *Strickland*'s prejudice prong, without deciding whether trial counsel's performance was deficient." Aplt. Br. 84. We disagree.

To begin, Eaton divorces the first two statements from their context. The WSC made both of these statements in analyzing Eaton's standalone due-process claim—in which he asserted that he "was unable to assist in his own defense and thus was not competent to be tried"—rather than in addressing the separate guilt-phase IAC claim—in which he asserted that "[c]ounsel's failure to address th[e] fundamental problem [of his alleged incompetency] and election to allow the case to proceed under these circumstances" violated the Sixth Amendment. *Eaton*, 192 P.3d at 49–50 (listing due-process claim and IAC claim as separate "issues"); *compare id.* at 52–60

19

(addressing Eaton's assertion that he was incompetent), *with id.* at 70 (addressing Eaton's assertion that "counsel's election to allow the trial to proceed when Eaton was not competent to stand trial" violated Sixth Amendment). Thus, these first two statements reveal little, if anything, about how the WSC resolved the guilt-phase IAC claim.

That leaves only the third statement that Eaton identifies, which does appear in the portion of the WSC's opinion addressing the guilt-phase IAC claim. That portion of the WSC's opinion states, "We have concluded that the record on appeal does not indicate that Eaton was not competent to be tried. Hence, we also conclude that [trial] counsel w[as] not ineffective for permitting the trial to go forward." *Id.* at 70.

Although Eaton fails to explain as much, it appears he interprets this portion of the WSC's opinion as concluding that because the record before the WSC didn't indicate Eaton was actually incompetent, trial counsel's failure to argue otherwise didn't prejudice Eaton. In other words, Eaton seems to suggest the WSC concluded that even if trial counsel had argued below that Eaton was incompetent to stand trial, the trial court would have rejected such an argument for lack of support. And under those circumstances (so Eaton's enthymematic argument presumably goes), there would exist no "reasonable probability that, but for counsel's unprofessional error[], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (setting forth applicable test for prejudice).

The state agrees with Eaton that "[i]f nothing in the record established that Eaton was not competent, then . . . Eaton could not have been prejudiced" by trial

20

counsel's failure to challenge his competency. Aplee. Br. 88. And so do we. *See Grant v. Royal*, 886 F.3d 874, 911 (10th Cir. 2018) ("[E]ven assuming arguendo the performance of [petitioner's] trial counsel was constitutionally deficient for failing to . . . seek a second competency trial[,] if [petitioner] was *actually competent*, [counsel's] unconstitutional performance would not have prejudiced him."). But as the state points out, "[i]f nothing in the record established that Eaton was not competent," then it's *also* the case that "counsel could not be deficient for not challenging [Eaton's] competency." Aplee. Br. 88; *see also, e.g.*, *Camacho v. Kelley*, 888 F.3d 389, 395 (8th Cir. 2018) (concluding that petitioner couldn't show counsel was "deficient in failing to have a competency evaluation performed" where "[n]othing in any of the three reports that [counsel] received and reviewed would have caused a reasonably professional counsel to conclude that [petitioner] was incompetent"); *Hibbler v. Benedetti*, 693 F.3d 1140, 1150 (9th Cir. 2012) ("As we have explained, the state court reasonably concluded that [petitioner's] lawyers had no reason to doubt that he was competent at the time he pleaded guilty. Thus, even on de novo review, [petitioner] could not establish that his counsel's performance was deficient.").

In other words, the WSC's finding that Eaton wasn't actually incompetent was dispositive of both the performance prong *and* the prejudice prong—not just one or the other. Accordingly, by relying on this finding to resolve the guilt-phase IAC claim, the WSC implicitly adjudicated both *Strickland* prongs, even if it didn't expressly explain that it was doing so. *See Wood v. Carpenter*, 907 F.3d 1279, 1296

21

& n.15 (10th Cir. 2018) (holding that state court performed both steps in *Strickland* analysis where, despite fact that state court "never used the words 'deficient performance' or 'prejudice,' . . . the substance of its concluding statement reache[d] both *Strickland* prongs"), *cert. denied*, No. 18-8666, 2019 WL 1458935 (U.S. June 24, 2019); *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1151–52 (11th Cir. 2017) (concluding that state court adjudicated both prongs of petitioner's IAC claim where state court relied on factor that was "[r]elevant to both prongs" of *Strickland* analysis, even though state court didn't expressly "explain every step of its decision-making process"), *cert. denied*, 138 S. Ct. 2681 (2018). And because the WSC adjudicated Eaton's argument that counsel's performance was deficient, that means he isn't "entitled to de novo review of the performance prong of his *Strickland* claim."[11] Aplt. Br. 69 (emphasis omitted). More importantly, it means that we must reject Eaton's first basis for arguing that the district court erred when, in analyzing the guilt-phase IAC claim, it refused to consider evidence that wasn't before the WSC. *See Pinholster*, 563 U.S. at 181; *Hooks*, 689 F.3d at 1163.

---

[11] This conclusion renders it unnecessary for us to address Eaton's related assertion that, when § 2254(d) doesn't "apply to the *performance* prong" of a petitioner's IAC claim, *Pinholster* doesn't bar a federal habeas court from considering new evidence in evaluating *prejudice*—even if that evidence wasn't before the state court that adjudicated the petitioner's IAC claim. Aplt. Br. 90 (emphasis added). For the reasons discussed above, § 2254(d) applies to the performance prong here. Thus, we need not discuss whether or how de novo review of the performance prong should have affected the district court's review the prejudice prong.

22

### B.    Cause and Prejudice

Next, Eaton asserts that even if both *Strickland* prongs are subject to § 2254(d) deference, the district court's finding that appellate counsel was ineffective in "failing to develop the record on the prejudice prong of" the sentencing-phase IAC claim during the *Calene* remand nevertheless satisfied the cause-and-prejudice test and allowed the district court to consider Eaton's new evidence of incompetence in evaluating the guilt-phase IAC claim. Aplt. Br. 113. This is so, Eaton argues, because "the same body of evidence" supports both the sentencing-phase IAC claim and the guilt-phase IAC claim. Aplt. Br. 74.

In other words, Eaton's position appears to be that (1) the *mitigating evidence* the district court said trial counsel should have discovered and presented to the jury at sentencing and (2) the "*mental[-]health*" *evidence* Eaton says trial counsel should have discovered and presented to show Eaton was incompetent to stand trial are in fact one and the same. *Id.* (emphasis added). Further, because the district court ruled that appellate counsel was ineffective in failing to develop and present this evidence to support the *sentencing-phase* IAC claim, Eaton insists that appellate counsel was also necessarily ineffective in failing to develop and present this same evidence to support the *guilt-phase* IAC claim. And according to Eaton, this latter ineffectiveness satisfied the cause-and-prejudice test and allowed the district court to consider Eaton's new evidence in evaluating the guilt-phase IAC claim.[12]

---

[12] We need not and do not decide whether, as Eaton alleges, appellate counsel was ineffective in failing to adequately develop and present this evidence for

We typically encounter such cause-and-prejudice arguments when a habeas claim is procedurally defaulted—i.e., when a petitioner presented a particular claim in state court, but "the state court declined to consider the merits of that claim based 'on independent and adequate state procedural grounds.'" *Smith v. Allbaugh*, 921 F.3d 1261, 1267 (10th Cir. 2019) (quoting *Maples v. Thomas*, 565 U.S. 266, 280 (2012)). Federal habeas courts generally can't review such procedurally defaulted claims. *See id.* But there exists an exception to this general rule: "[A] court may excuse a procedural default 'if a petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law."'"[13] *Id.* (quoting

---

purposes of the guilt-phase IAC claim. Even assuming Eaton is correct on this point, his cause-and-prejudice argument fails for the reasons discussed in the text.

We stress, however, that to the extent we (1) assume for purposes of resolving Eaton's cause-and-prejudice argument that appellate counsel was ineffective in failing to adequately litigate the guilt-phase IAC claim, and yet (2) nevertheless ultimately refuse to disturb Eaton's convictions, we in no way mean to suggest that a petitioner can never obtain federal habeas relief based on a standalone claim alleging ineffective assistance of appellate counsel. Indeed, Eaton did just that in this very case: based in part on the appeal-phase IAC claim—in which Eaton alleged he was entitled to habeas relief because appellate counsel was ineffective in failing to adequately litigate the *sentencing-phase* IAC claim—the district court granted the writ and vacated Eaton's death sentence.

Critically, however, we question whether Eaton adequately presented to the district court any argument that he is entitled to habeas relief based on a standalone claim that appellate counsel was ineffective in failing to adequately litigate the *guilt-phase* IAC claim. *See Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015) (noting that petitioner forfeited argument by failing to raise it in district court). Likewise, Eaton presents no such standalone claim to us on appeal. And we cannot grant Eaton habeas relief based on a claim he does not present.

[13] In this context, the term "actual prejudice" refers to the "prejudice arising 'from the errors' that form the basis of" the procedurally defaulted claim. *Smith*, 921 F.3d at 1271 (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982)).

24

*Magar v. Parker*, 490 F.3d 816, 819 (10th Cir. 2007)). And notably, when the procedurally defaulted claim alleges that *trial counsel* was ineffective, a petitioner may be able to establish both cause and prejudice by demonstrating that *appellate counsel* was ineffective in failing to raise trial counsel's ineffectiveness. *See Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 747 (10th Cir. 2016) (analyzing petitioner's "argument that appellate counsel's ineffectiveness in failing to raise . . . trial counsel['s] ineffectiveness demonstrate[d] cause and prejudice to overcome the procedural bar" and explaining that such "[a] claim of ineffective assistance of appellate counsel can serve as cause and prejudice to overcome a procedural bar, if it has merit").

Here, Eaton doesn't suggest the guilt-phase IAC claim is procedurally defaulted. Indeed, as we discuss above, the WSC indisputably reached and resolved the merits of that claim. *Compare supra* Section I.A., *with Smith*, 921 F.3d at 1267 & n.2. Nevertheless, Eaton cites the Supreme Court's pre-AEDPA decision in *Keeney v. Tamayo-Reyes* for the proposition that, "[a]s in cases of state procedural default, application of the cause-and-prejudice standard to excuse a state prisoner's failure to develop material facts in state court will appropriately accommodate concerns of finality, comity, [and] judicial economy." Aplt. Br. 116 (quoting 504 U.S. 1, 8 (1992)). And he asserts that *Keeney* survived *Pinholster* unscathed, "thus leaving untouched [a] federal court's power to hear evidence that was not presented to the state court because of constitutionally ineffective [appellate] counsel." Aplt. Br. 116. Finally, he points to the district court's ruling below that appellate counsel was

25

ineffective in failing to adequately develop the *sentencing-phase* IAC claim during "the *Calene* hearing and on appeal," App. vol. 18, 960, argues that this unchallenged finding requires us to conclude that appellate counsel was also ineffective in failing to develop the same evidence for purposes of the *guilt-phase* IAC claim, and concludes that he was therefore entitled to rely on his new evidence for purposes of that latter claim. Aplt. Br. at 116.

Eaton's argument on this point is somewhat difficult to decipher.[14] But at bottom, it appears he is asking us to recognize an exception to *Pinholster*'s evidentiary rule—an exception that applies when inadequacies in the state-court record are the result of appellate counsel's ineffectiveness. According to Eaton, failure to acknowledge such an exception would yield unjust results by punishing petitioners for conduct that is "attributable to the state." *Id.* at 116; *cf. Cuyler v. Sullivan*, 446 U.S. 335, 343–44 (1980) (explaining that "the [s]tate participate[s] in the denial of . . . [t]he right to counsel guaranteed by the Sixth Amendment" when it "conduct[s] trials at which persons who face incarceration must defend themselves without adequate legal assistance").

Yet as the state points out, the *Pinholster* majority was unquestionably aware of the potentially unjust consequences of its holding. Indeed, Justice Sotomayor cited those consequences as the primary basis for her dissent. *See Pinholster*, 563 U.S. at

---

[14] Indeed, we question whether Eaton's one-paragraph argument is sufficient to adequately brief this point at all. *See Grant v. Trammell*, 727 F.3d 1006, 1025 (10th Cir. 2013) (noting that "[e]ven a capital defendant can waive an argument by inadequately briefing" it).

214–15, 217 (Sotomayor, J., dissenting) (accusing majority of potentially "foreclos[ing] habeas relief for diligent petitioners who, *through no fault of their own*, were unable to present [certain] evidence to the state court that adjudicated their claims," and citing this consequence as "good reason to conclude" that majority's holding was incorrect (emphasis added)).

Notably, Justice Sotomayor's express concerns didn't deter the *Pinholster* majority from unequivocally holding—without carving out an exception for diligent petitioners who received ineffective assistance of appellate counsel—that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 181 (majority opinion); *see also id.* at 185 ("[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.").

Instead, the *Pinholster* majority responded to Justice Sotomayor's concerns by suggesting that in some circumstances, the new evidence a petitioner presents for the first time in federal court may be so different from the evidence he or she was able to develop in state court that the new evidence "fundamentally change[s]" the petitioner's claim, thus "render[ing] it effectively unadjudicated." *Id.* at 187 n.11; *see also id.* at 186 n.10 (suggesting that such additional facts "may well present a new claim" rather than one "adjudicated on the merits"); *id.* at 216 (Sotomayor, J., dissenting) ("The majority presumably means to suggest that the petitioner might be

27

able to obtain federal-court review of his new evidence if he can show cause and prejudice for his failure to present the 'new' claim to a state court.").

Notably, Eaton doesn't argue in his opening brief that the new evidence of his incompetence renders the guilt-phase IAC claim a "new claim" that the WSC never adjudicated.[15] *Id.* at 186 n.10 (majority opinion). Nor does he identify a single authority indicating there might exist a cause-and-prejudice exception to *Pinholster*'s evidentiary rule for circumstances in which appellate counsel's ineffectiveness results in an inadequate state record. And in light of the interplay between the majority opinion and Justice Sotomayor's dissent in *Pinholster*, we see no space to carve one out. We therefore reject Eaton's argument that appellate counsel's ineffectiveness provided the district court with an avenue for considering Eaton's new evidence in determining whether he was entitled to relief on the guilt-phase IAC claim.

## C.     Satisfying § 2254(d) on the State-Court Record

In his final challenge to the district court's order denying relief on the guilt-phase IAC claim, Eaton asserts that even assuming (1) § 2254(d) applies to the guilt-phase IAC claim and (2) the cause-and-prejudice exception didn't permit the district court to consider the new evidence in determining whether Eaton can satisfy § 2254(d), he can nevertheless satisfy § 2254(d)(2) based solely on the record before

---

[15] Eaton attempts to make a new-claim argument for the first time in his reply brief. But arguments advanced for the first time in a reply brief are waived. *See United States v. Beckstead*, 500 F.3d 1154, 1162 (10th Cir. 2007).

the WSC when it adjudicated the guilt-phase IAC claim. Specifically, Eaton asserts that by denying appellate counsel's requests for more time to investigate during the *Calene* remand, the WSC (1) denied him "an adequate opportunity to develop" the evidence that would have established prejudice for purposes of the guilt-phase IAC claim and then (2) "denied [the guilt-phase IAC claim] because he failed to show that he was prejudiced." Aplt. Br. 118–19. And in doing so, Eaton asserts, the WSC "whipsawed" him, *id.* at 119, just as the state court did to the petitioner in *Brumfield*, 135 S. Ct. 2269. Thus, he insists, the WSC's "failure to afford [him] an adequate opportunity to develop" the guilt-phase IAC claim "establishes that its denial of [that] claim 'was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate[-]court proceeding.'" Aplt. Br. 118 (quoting § 2254(d)(2)).

Although the procedural facts of this case are not entirely dissimilar to those before the Court in *Brumfield*, Eaton's reliance on the Court's decision in that case is nevertheless misplaced. In *Brumfield*, the state court first denied the petitioner's request for funding to investigate his intellectual disabilities and then denied the petitioner's request for an evidentiary hearing based on the petitioner's failure to make a threshold showing of those same disabilities. *See* 135 S. Ct. at 2275. And as Eaton points out, the federal district court in *Brumfield* concluded that "denying [the petitioner] an evidentiary hearing" after denying him "funding to develop" the very evidence he needed to entitle him to such a hearing satisfied § 2254(d)(1) because— according to the *Brumfield* district court—that decision unreasonably applied clearly

29

established due-process law. *Id.* Further, Eaton points out, the Supreme Court ultimately agreed with the federal district court's conclusion that the petitioner "satisfied the requirements of § 2254(d)." *Id.* at 2283. Thus, Eaton asserts, we must reach the same conclusion here.

We disagree. Critically, in affirming the district court's § 2254(d) ruling in *Brumfield*, the Court expressly declined to address the federal district court's § 2254(d)(1) ruling. *See id.* at 2276. That is, the Court declined to address whether depriving the petitioner of an opportunity to present certain evidence and then denying relief based on the petitioner's subsequent failure to present that very same evidence satisfied *§ 2254(d)(1)*. *See id.* Instead, the Court affirmed based solely on the federal district court's alternative ruling that the petitioner in that case satisfied *§ 2254(d)(2)*. *Id.* And in doing so, the Court relied on two specific factual findings that it said were unreasonable in light of the record before the state court when it adjudicated the petitioner's claim: (1) the state court's finding that the petitioner's "reported IQ score of 75 somehow demonstrated that he could not possess subaverage intelligence" and (2) state court's finding "that the record failed to raise any question as to" whether the petitioner's adaptive skills were impaired. *Id.* at 2278–79; *see also id.* at 2275–76.

Here, on the other hand, Eaton fails to explain in his opening brief which, if any, of the WSC's specific factual findings were unreasonable based on the record before it when it adjudicated the guilt-phase IAC claim. Instead, in arguing he can satisfy § 2254(d)(2), he relies solely on his assertion that the WSC impermissibly

30

"whipsawed" him "in the same way" the state court "whipsawed" the petitioner in *Brumfield*.[16] Aplt. Br. 119. But in *Brumfield*, the federal district court ruled that state court's actions in "whipsaw[ing]" the petitioner satisfied § 2254(d)(1), not § 2254(d)(2)—an argument Eaton doesn't make here. *Id.*; *see also Brumfield*, 135 S. Ct. at 2275. And more to the point, the Court expressly declined to address whether this aspect of the district court's ruling in *Brumfield* was correct. *See* 135 S. Ct. at 2276. Thus, nothing in *Brumfield* supports Eaton's argument that he can satisfy § 2254(d)(2) based on the record before the WSC when it adjudicated the guilt-phase IAC claim.

Further, because Eaton fails to satisfy § 2254(d), we need not address whether, as Eaton next argues, appellate counsel's "diligen[ce]" in attempting to develop the state-court record during the *Calene* remand satisfies § 2254(e)(2)(A)(ii) and therefore entitles him to rely on his new evidence to support the guilt-phase IAC claim. *Id.* at 117 (quoting R. vol. 18, 960); *see also Smith*, 904 F.3d at 886. (explaining that petitioner must satisfy *both* § 2254(e)(2) *and* § 2254(d) before

---

[16] In his reply brief, Eaton makes a different § 2254(d)(2) argument. There, he concedes that the evidence before the WSC when it adjudicated the guilt-phase IAC claim was insufficient to establish he was *actually* incompetent to stand trial. But he insists—for the first time—that this evidence was nevertheless sufficient to put trial counsel "on notice" of the *possibility* of his incompetence, thus triggering trial counsel's duty to investigate further. Rep. Br. 19. And given this evidence, he asserts, the WSC's adjudication of the guilt-phase IAC claim was "based on an unreasonable determination of [the] facts in light of" the state-court record. *Id.* at 16. But because Eaton advances this § 2254(d)(2) argument for the first time in his reply brief, we decline to address it. *See Beckstead*, 500 F.3d at 1162.

31

federal habeas court may conduct evidentiary hearing or consider new evidence developed at such hearing).

In summary, because the WSC adjudicated both of the *Strickland* prongs in rejecting the guilt-phase IAC claim, the district court properly confined its § 2254(d) analysis to the record before the WSC when it adjudicated that claim. And Eaton fails to demonstrate in his opening brief that the WSC's adjudication of the guilt-phase IAC claim satisfies § 2254(d) in light of the state-court record. We therefore affirm the district court's order denying him relief on the guilt-phase IAC claim and turn next to those of Eaton's arguments that implicate his sentence.

## II.     The Rule 59(e) Motion

After the district court vacated his death sentence, Eaton filed a Rule 59(e) motion in which he asked the district court to modify its conditional writ to preclude the state from conducting new death-penalty proceedings. In support, Eaton argued that the underlying Sixth Amendment violation—i.e., trial counsel's ineffectiveness in failing to adequately investigate and present mitigating evidence at sentencing— couldn't be "cured by" a new sentencing proceeding "in light of the number of mitigation witnesses who have died or otherwise become unavailable since [his] original trial." App. vol. 18, 967. In fact, Eaton insisted, conducting new death-penalty proceedings wouldn't merely fail to remedy the underlying Sixth Amendment violation; it would violate anew "his Sixth Amendment right to counsel, the Eighth Amendment's prohibition of cruel and unusual punishment, and the Due Process Clause of the Fourteenth Amendment." *Id.* at 971.

The district court declined to address whether, given the number of now-unavailable mitigation witnesses, new death-penalty proceedings could cure the underlying constitutional error. Likewise, it declined to address whether conducting such proceedings might further violate Eaton's constitutional rights. Instead, it ruled that "under the notion of 'comity,'" Eaton should first present these issues in state court "if a resentencing is, in fact, pursued." *Id.* at 1825 (quoting *Younger*, 401 U.S. at 44).

In evaluating Eaton's challenges to this ruling, we review only for abuse of discretion. *See Douglas v. Workman*, 560 F.3d 1156, 1176 (10th Cir. 2009) ("We review the district court's formulation of an appropriate habeas corpus remedy for abuse of discretion."); *Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) ("We review the district court's denial of a Rule 59(e) motion for an abuse of discretion."). Under this deferential standard of review, we won't disturb the district court's ruling unless it was "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008) (quoting *United States v. Byrne*, 171 F.3d 1231, 1236 (10th Cir. 1999)); *see also United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (explaining that "in many cases there will be a range of possible outcomes the facts and law at issue can fairly support," and that "rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices").

33

In challenging the district court's ruling, Eaton first reiterates his assertion that the underlying Sixth Amendment error "cannot be cured by" new death-penalty proceedings because so many of his mitigation witnesses have died or otherwise become unavailable since his 2004 trial and sentencing. Aplt. Br. 50. He then advances a two-part argument for reversal. First, he alleges that under these circumstances, the district court had discretion to grant an unconditional writ. Second, he argues the district court abused that discretion by instead deferring resolution of Eaton's constitutional arguments to Wyoming's state courts.

Eaton's first point finds some support in our case law. *See United States v. Bergman*, 746 F.3d 1128, 1134 (10th Cir. 2014) ("If so much time has passed and so many witnesses have died and so much evidence has been lost that not even Daniel Webster could provide constitutionally adequate representation, precluding a new trial could become an appropriate remedy for [a Sixth Amendment violation based on counsel's ineffectiveness]."); *Capps v. Sullivan*, 13 F.3d 350, 352 (10th Cir. 1993) (noting that federal habeas courts retain authority to bar retrial "when the error forming the basis for the relief cannot be corrected in further proceedings").

Nevertheless, for two independent reasons, we decline to reverse the district court's order denying Eaton's Rule 59(e) motion. First, as the state points out, Eaton raised this argument—i.e., that the underlying constitutional error couldn't be cured by a new sentencing proceeding and that the *only* appropriate remedy the district court could constitutionally impose was an unconditional writ—for the first time in his Rule 59(e) motion. And as the state further points out, a Rule 59(e) motion isn't

34

the appropriate vehicle in which to advance for the first time "arguments that could have been raised earlier" in the proceedings. Aplee. Br. 50 (quoting *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014)); *see also Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("Absent extraordinary circumstances . . . the basis for the [motion to reconsider] must not have been available at the time the first motion was filed.").

Eaton doesn't appear to disagree with the state's assertion that he never expressly asked the district court, at any point before he filed his Rule 59(e) motion, to bar the state from conducting new death-penalty proceedings. On the contrary, Eaton concedes that he actually "*requested* a conditional writ" in his § 2254 motion and that he initially failed to make "a specific request" for an unconditional one. Rep. Br. 9, 10 n.6 (emphasis added). Nevertheless, Eaton asserts, his unavailable-witnesses argument formed a proper basis for his Rule 59(e) motion because he had previously "raised *the problem* of deceased mitigation witnesses before the district court" and had likewise "*presented evidence* that a fair resentencing was impossible." *Id.* at 9–10 (emphases added).

But merely raising the specter of an argument (or even presenting evidence that might give corporeal form to such an argument once made) doesn't equate to advancing an argument itself. *Cf. Eizember v. Trammell*, 803 F.3d 1129, 1141 (10th Cir. 2015) (finding issue waived where petitioner failed to present it "in a way that might fairly inform opposing counsel or a court of its presence in the case"). Thus, Eaton's Rule 59(e) motion wasn't an appropriate vehicle in which to advance, for the

35

first time, his argument that an unconditional writ was the *only* adequate remedy the district court could constitutionally impose. *See Servants of Paraclete*, 204 F.3d at 1012. And we could therefore affirm the district court's order denying Eaton's Rule 59(e) motion on this basis alone. *See Newmiller v. Raemisch*, 877 F.3d 1178, 1194 (10th Cir. 2017) (noting that we may affirm district court's ruling on any basis that finds support in record), *cert. denied*, 139 S. Ct. 59 (2018).

Second, even assuming Eaton properly raised his request for an unconditional writ in his Rule 59 motion, we hold that the district court didn't err—let alone abuse its discretion—in rejecting that request on the merits. In denying Eaton's Rule 59(e) motion, the district court reasoned that "under the notion of 'comity,'" Eaton's arguments about the constitutionality of conducting a new death-penalty proceeding would be "best resolved by the state[-]court system" if the state chooses to pursue resentencing. App. vol. 18, 1825 (quoting *Younger*, 401 U.S. at 44). That is, the district court recognized there was "a range of possible outcomes the facts and law at issue c[ould] fairly support," *McComb*, 519 F.3d at 1053, and chose what it believed to be the "best" of those outcomes, App. vol. 18, 1825. Thus, we will affirm unless Eaton can demonstrate the district court's decision falls outside "the realm of . . . rationally available choices." *McComb*, 519 F.3d at 1053.

Eaton fails to make that showing here. In particular, he fails to identify on appeal any reason to think that Wyoming's state courts "will be unable to evaluate the prejudicial effect of [the] lapse of time" on his mitigation case. *Woodfox v. Cain*, 805 F.3d 639, 648 (5th Cir. 2015). And in the absence of such an argument, we see

36

nothing unreasonable about the district court's decision to defer that matter to the state-court system. *Cf. id.* at 647–49 (holding that district court abused its discretion in granting unconditional writ despite fact that "forty years had passed since the crime at issue and . . . a number of witnesses had passed away"; noting that district court "failed to explain why these issues could not be addressed by a *state court* first at retrial" and reasoning that "[f]ederal habeas courts . . . should let state courts address constitutional and evidentiary issues in the first instance"). Accordingly, we affirm the district court's order denying Eaton's Rule 59(e) motion.

## III.    The State's Failure to Timely Comply with the Writ's Requirements

Even assuming the district court acted within its discretion in declining to grant him an unconditional writ barring resentencing, Eaton argues that the state nevertheless forfeited its right to pursue such resentencing by failing to comply with the conditional writ's requirements. Specifically, Eaton points out that the writ (1) gave the state 120 days in which to commence new death-penalty proceedings and (2) required the state to promptly appoint experienced death-penalty counsel to represent him in such proceedings.

In light of the state's apparent noncompliance with these requirements, we directed a limited remand to the district court to address whether the state failed to comply with the writ and, if so, whether its noncompliance resulted in a waiver of the state's right to pursue new death-penalty proceedings. On remand, the district court found that the state indeed violated the terms of the writ by failing to promptly

appoint experienced death-penalty counsel.[17] But it nevertheless ruled that the state's noncompliance didn't result in a waiver of its right to pursue resentencing. Notably, in reaching that conclusion, the district court relied in part on the fact that Eaton had filed with the state trial court a notice in which he argued that, in light of the ongoing proceedings in federal court, it would be "premature . . . to initiate *any* further state [-]court proceedings." App. vol. 19, 27. Thus, the district court reasoned, Eaton himself was at least partially responsible for any delay in the appointment of counsel.

On appeal, Eaton argues the district court's ruling on remand constitutes an abuse of discretion. Yet, with the exception of a two-sentence footnote, his opening brief fails to address the district court's finding that Eaton couldn't use the state's delay in appointing counsel as a basis for finding waiver when Eaton himself argued to the state trial court that "*any* further state[-]court proceedings" would be premature in light of the ongoing federal litigation. *Id.* And "[a]rguments raised in a perfunctory manner, such as in a footnote, are waived." *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002). So too are arguments made for the first time in a reply brief, which is where Eaton attempts to fully engage with the district court's conclusion that he was at least partially responsible for the delay in appointing counsel.[18] *See Beckstead*, 500 F.3d at 1162.

---

[17] Curiously, the district court didn't address whether the state had likewise failed to commence new death-penalty proceedings within the writ's 120-day time limit.

[18] Moreover, in light of this waiver, we need not address the arguments that Eaton *does* adequately present in his opening brief. Those arguments challenge the district court's other reasons for concluding that the state isn't precluded, as a result

We could affirm on this basis alone. Nevertheless, we alternatively conclude that the arguments Eaton advances for the first time in his reply brief fail. There, Eaton asserts that the trial court misinterpreted his notice and that he can't be held responsible for the trial court's misinterpretation because his notice accurately quoted the language of the writ. But Eaton did more than merely quote the writ's language. He also affirmatively argued to the trial court that "*any* further state[-]court proceedings"—including, presumably, the appointment of counsel—would be premature in light of the ongoing federal litigation. App. vol. 19, 27. Further, as the state points out, Eaton *inaccurately* informed the trial court that the federal district court had "stay[ed]" the state-court proceedings; in reality, the district court had only stayed Eaton's *execution*. *Id.*

Thus, Eaton fails to demonstrate any error in the district court's conclusion that Eaton was at least partially to blame for the state's noncompliance with the writ's requirements. Under these circumstances, we conclude that the district court did not abuse its discretion in refusing to preclude the state from conducting new death-penalty proceedings. *Cf. Gibbs v. Frank*, 500 F.3d 202, 207–10 (3d Cir. 2007)

---

of its failure to comply with the writ's requirements, from pursuing new death-penalty proceedings. Even if Eaton could prevail on those arguments, the district court's order "would still stand on the alternative ground" that Eaton fails to adequately challenge in his opening brief: namely, Eaton cannot be heard to complain of a delay that he was at least partially responsible for causing. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004); *cf. also Harvis v. Roadway Exp. Inc.*, 923 F.2d 59, 60 (6th Cir. 1991) (noting that "a party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to commit").

(holding that district court didn't abuse its discretion in excusing state's noncompliance with conditional writ's deadline where district court concluded that defendant was at least partially responsible for delay); *Chambers v. Armontrout*, 16 F.3d 257, 260–61, 261 n.2 (8th Cir. 1994) (rejecting defendant's argument that district court lacked "authority to modify [Eighth Circuit's] mandate by granting the state additional time to retry him," in part because "there was also some evidence that the delay in retrial" was partially attributable to defendant).

## IV.    The *Brady* Claim

To recap, we have thus far determined that the district court didn't err in denying relief on the guilt-phase IAC claim. And we have also resolved that the district court didn't abuse its discretion in refusing to preclude the state from conducting new death-penalty proceedings, either when it denied Eaton's Rule 59(e) motion or when it declined to find waiver on remand.

That leaves only Eaton's argument that the district court erred in denying relief on the *Brady* claim, which the district court found to be procedurally defaulted. In relevant part, the *Brady* claim alleges that (1) the state suppressed certain impeachment evidence about its relationship with Joseph Dax, who testified at trial that while the two men were incarcerated together, Eaton confessed to kidnapping, sexually assaulting, and murdering Kimmell, and (2) Dax's testimony prejudiced Eaton, both during the guilt phase and the sentencing phase. But as the state points out, Eaton will now receive either an automatic life sentence or a new death-penalty sentencing proceeding. Thus, to the extent Eaton's *Brady* claim rests on an assertion

40

of prejudice at sentencing, the state argues that this aspect of Eaton's *Brady* claim is now moot. *See S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) (holding that claim was moot where "relief ha[d] already been obtained"). Notably, Eaton doesn't respond to the state's mootness argument in his reply brief. Accordingly, we treat any non-obvious responses he could have made as waived and assume the state's mootness analysis is correct. *Cf. Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994) ("When an appellee advances an alternative ground for upholding a ruling by the district judge, and the appellant does not respond in his reply brief or at argument . . . he [or she] waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellee.").

Yet this conclusion doesn't entirely resolve Eaton's argument that the district court erred in denying relief on the *Brady* claim. As discussed above, Eaton argues that the state's alleged suppression of impeachment evidence resulted in prejudice at the guilt phase of his trial as well. Specifically, he asserts that Dax's testimony was the only "direct evidence of premeditation" and that "premeditation was the only contested issue" during the guilt phase. Aplt. Br. 134, 136.

But Eaton did not seek—and the district court did not grant—a COA to appeal the district court's ruling that there existed no "reasonable likelihood that Dax's alleged[ly] false testimony affected *the verdict*." App. vol. 13, 956 (emphasis added). Instead, Eaton sought a COA on the question of whether Dax's testimony was "material to the question of *punishment*." App. vol. 18, 1828 (emphasis added). And the district court granted a COA only on this basis.

Thus, any argument that Eaton is entitled to relief under *Brady* based on prejudice arising from the guilt phase of his trial is beyond the scope of his COA. *See* § 2253(c)(3) (requiring COA to designate "specific issue or issues" that satisfy § 2253(c)(2)'s requirements). And to the extent Eaton's arguments are beyond the scope of his COA, we decline to consider them. *See Smith v. Duckworth*, 824 F.3d 1233, 1238 n.1 (10th Cir. 2016) (declining to address claims that fell outside scope of issues designated in COA); *Fields v. Gibson*, 277 F.3d 1203, 1216 n.8 (10th Cir. 2002) ("'[A]ppellate review of the habeas denial is limited to the specified issues' in the [COA]." (first alteration in original) (quoting *Ramsey v. Bowersox*, 149 F.3d 749, 759 (8th Cir. 1998)). Accordingly, we will not disturb the district court's ruling denying relief on the *Brady* claim.

## Conclusion

Because the WSC adjudicated the guilt-phase IAC claim on the merits, the district court correctly declined to consider Eaton's new evidence in determining whether Eaton was entitled to relief on that claim. Further, because Eaton fails to demonstrate in his opening brief that he can satisfy § 2254(d) based solely on the record that was before the WSC, we affirm the district court's order denying relief on the guilt-phase IAC claim.

We likewise affirm the district court's orders (1) refusing to modify the conditional writ to preclude resentencing and (2) ruling that the state didn't waive its right to pursue such resentencing by failing to timely comply with the conditional writ's requirements. Specifically, we hold that the district court acted within its

42

discretion in concluding that Wyoming's state courts should be the first to address Eaton's arguments about the constitutionality of resentencing and in determining that Eaton's own actions contributed to the state's failure to promptly appoint counsel.

Finally, we decline to address Eaton's argument that the district court erred in denying relief on the *Brady* claim; Eaton has waived any response to the state's argument that part of this claim is now moot, and what remains of Eaton's *Brady* claim falls outside the scope of his COA.

We remand this matter to the district court with instructions to effectuate the conditional writ of habeas corpus that it granted on November 20, 2014, and stayed in part on December 21, 2015.