**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN FRANCIS DEWALD,

    Defendant - Appellant.

No. 20-6067
(D.C. Nos. 5:19-CV-00548-F &
5:17-CR-00225-F-1)
(W.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

John Francis DeWald seeks a Certificate of Appealability (COA) to challenge the

district court's denial of his 28 U.S.C. § 2255 petition.[1] He argues that his counsel was

constitutionally ineffective for disregarding his explicit request for an appeal and for not

consulting with DeWald about an appeal. But contrary to DeWald's narrative, the record

shows that DeWald never instructed his counsel to file an appeal. And relying on the

factors the Court set out in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), we conclude that

DeWald's counsel did not have a duty to consult with him about an appeal, principally

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We liberally construe DeWald's filings in view of his pro se status, but we do not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

because no nonfrivolous bases exist for an appeal. Accordingly, we deny a COA and dismiss this case. We also deny DeWald's motion to proceed *in forma pauperis*.

## BACKGROUND

### I. DeWald's Conviction and Sentence

DeWald was under the influence of methamphetamine, recently fired (on account of his methamphetamine use), and going on two days without sleep when he decided to rob the BancFirst Bank in Oklahoma City, Oklahoma. On September 19, 2017, DeWald arrived undisguised at the bank and approached the teller station. He put a bag and a deposit slip on the counter and pushed them toward the teller, leading her to believe that he was making a cash deposit. But DeWald was not there to transfer cash from the bag to the bank; he was there to transfer cash from the bank to the bag. The teller realized this when, upon her seeing that the bag was empty, DeWald told her, "Don't make a sound. Shut up." R. vol. 2 at 34 (internal quotation marks omitted). He then pushed the deposit slip toward her again, and she saw a note that was on the deposit slip: "Fill this bag with larger bills, no dumb stuff no one gets [illegible]." *Id.* at 34–35 (alteration in original) (internal quotation marks omitted). The teller, who was described as "noticeably 'shaken up'" after the robbery, *id.* at 35, complied, placing $2,350 in the bag. DeWald took the money and left.

Yet DeWald's escape would be short-lived. Unbeknownst to him, the teller had included a GPS-tracking bill with the cash in the bag. Equipped with technology pinpointing DeWald's location, the first officer arrived at DeWald's house less than thirty minutes after the robbery. That officer then saw a man meeting the bank robber's

description run from the back of the house to the back yard and toss a bag into the neighbor's yard. By then, other officers had arrived, and DeWald tried to escape on foot. After a brief chase, the officers caught and arrested him. Once they had caught him, the officers saw that "[t]he GPS signal from the robbery corresponded to the neighboring yard." R. vol. 1 at 13. The officers recovered the bag, finding inside it "$2,350, not including the GPS tracker." *Id.*

On October 3, 2017, a federal grand jury indicted DeWald on one count of bank robbery, in violation of 18 U.S.C. § 2113(a). Seventeen days later, DeWald signed a petition to enter a guilty plea, admitting that "[o]n September 19, 2017, I robbed the BancFirst bank . . . by presenting a note demanding money." R. vol. 1 at 31. On November 9, the district court held a change-of-plea hearing and accepted DeWald's guilty plea. In response to questioning from the district court, DeWald admitted that he "intend[ed] the teller to feel threatened or intimidated by th[e] note[.]" *Id.* at 99.

With DeWald pronounced guilty, the next issue was sentencing. A United States Probation Officer completed a Presentence Investigation Report (PSR), calculating DeWald's advisory sentencing guidelines range as 151 to 188 months' imprisonment. That range depended on a career-offender enhancement, based on DeWald's having "at least two prior felony convictions for a controlled substance offense" and his instant offense being a crime of violence. R. vol. 2 at 8, 37; *see also* U.S. Sentencing Guidelines Manual (U.S.S.G.) § 4B1.1(a), (b) (U.S. Sentencing Comm'n 2016) (describing the career-offender requirements and setting the offense levels for career offenders).

3

In a sentencing memorandum, DeWald objected to the PSR's "application of the Career Offender enhancement from USSG § 4B1.1." R. vol. 1 at 44. He disputed that his instant Oklahoma bank robbery qualified as a crime of violence, on grounds that he had robbed the bank by using only "a hand written note[.]" *Id.*

Citing *United States v. McCranie*, 889 F.3d 677 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1260 (2019), the district court overruled DeWald's objection, reasoning "that bank robbery is categorically a crime of violence[.]" R. vol. 1 at 105. During the hearing, DeWald's counsel conceded that, by giving the teller the note demanding money, DeWald had acted violently and intimidated the teller. With DeWald conceding the point, the district court concluded that the bank robbery was a crime of violence and that the career-offender enhancement applied.

On June 14, 2018, the district court sentenced DeWald to 188 months' imprisonment and three years' supervised release. DeWald did not appeal.

## II.     DeWald's § 2255 Petition

On June 17, 2019, DeWald filed a habeas petition under 28 U.S.C. § 2255, challenging his conviction and his sentence. DeWald's petition raised three grounds for relief: (1) his trial counsel had provided ineffective assistance by not filing an appeal despite DeWald's request that counsel do so, (2) his trial counsel had provided ineffective assistance by not consulting with DeWald about an appeal, and (3) the district court had improperly "impos[ed] a 2pt level increase for threat of death." R. vol. 1 at 64–65; *see also* U.S.S.G. § 2B3.1(b)(2)(F) (increasing a defendant's offense level by two levels if, during a robbery, "a threat of death was made"). In a supplemental brief, DeWald raised

4

five additional issues, appearing to argue that his counsel should have appealed on additional grounds: (i) that the district court had deprived DeWald of his "right to equal protection" by denying his request for pre-sentencing release based on DeWald's being "too old to change," (ii) that DeWald's "prior conviction(s) [were] to[o] stale to use as a basis for career enhancement," (iii) that "imposing a sentence under the guidelines career offender provision is a violation of Petitioner's 5th amendment right under the Double Jeopardy clause," (iv) that the government had presented an "insufficient factual basis to sustain a guilty plea," and (v) that "the Government did not have subject matter jurisdiction to prosecute the bank robbery[.]" R. vol. 1 at 84. DeWald also requested an evidentiary hearing.

The district court denied DeWald's § 2255 petition and his request for an evidentiary hearing. First, the court noted that DeWald's first ground for relief—that his counsel had disregarded his request for an appeal—was unsupported by any evidence: DeWald had sent a letter to his counsel, but the letter "says nothing specific about an appeal." *Id.* at 151. Moreover, by the time DeWald had sent the letter, the time for a direct appeal had already expired. Second, the court concluded that DeWald's counsel had not provided ineffective assistance by failing to consult about an appeal, because no nonfrivolous grounds to appeal existed. Third, the court rejected DeWald's argument that he had received an improper threat-of-death enhancement because the court had not applied such an enhancement. Finally, the court summarily rejected DeWald's supplemental-briefing arguments, noting that they lacked merit and that DeWald had failed to put forth any "developed argument regarding these matters[.]" *Id.* at 150.

5

DeWald now seeks a COA to challenge the district court's dismissal of his § 2255 petition.

## DISCUSSION

### I. The COA Standard

DeWald must obtain a COA to appeal the district court's dismissal of his § 2255 petition. *See* 28 U.S.C. § 2253(c)(1)(B). To demonstrate that he is entitled to a COA, DeWald must provide "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). In other words, DeWald must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### II. Ineffective Assistance: Not Filing or Consulting About an Appeal[2]

A defendant pursuing an ineffective-assistance-of-counsel claim "must show that counsel's representation fell below an objective standard of reasonableness" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). In *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), the Court held that

---

[2] On appeal, DeWald largely abandons his original arguments, raising a myriad of new issues instead. Chief among these is his contention that the note that he used to rob the bank was fraudulent. Yet at his change-of-plea hearing, DeWald admitted that he presented the note to the teller and that he "intend[ed] the teller to feel threatened or intimidated by th[e] note[.]" R. vol. 1 at 99. At any rate, we decline to entertain DeWald's newly minted appellate arguments. *See United States v. Fishman*, 608 F. App'x 711, 712 (10th Cir. 2015) (unpublished) ("[A] district court cannot be debatably wrong on issues that are not fairly presented to or decided by it." (citations omitted)); *United States v. Cook*, 997 F.2d 1312, 1316 (10th Cir. 1993) ("In the present appeal, Defendant raises thirty-one grounds for relief. To the extent that he failed to raise these grounds in his § 2255 motion to the district court, he has waived them." (citation omitted)).

6

the *Strickland* framework governs a defendant's claim "that counsel was constitutionally ineffective for failing to file a notice of appeal."

Under *Flores-Ortega*, ineffective-assistance claims based on counsel's failure to file an appeal come in two forms. In the first, a defendant might give his or her lawyer specific instructions: either file an appeal or do not file an appeal. If counsel "disregards specific instructions from the defendant to file a notice of appeal," counsel "acts in a manner that is professionally unreasonable." *Id.* (citations omitted).

The second scenario is more nuanced: what happens when the defendant never said anything about an appeal? In that situation, "the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478. If so, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* If not, then courts must address whether counsel had a duty to consult with the defendant. *See id.* at 478–81.

Counsel has a duty to consult with the client about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. Under *Strickland*'s first prong, "[t]he failure to consult under either of those scenarios constitutes deficient performance." *United States v. Herring*, 935 F.3d 1102, 1108 (10th Cir. 2019).

In addressing this issue, courts must look at the totality of the circumstances, considering "all the information counsel knew or should have known." *Flores-Ortega*, 528 U.S. at 480 (citation omitted). Important here, the *Flores-Ortega* Court instructed that "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* But even when the defendant pleads guilty, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

Once the court has determined that counsel has breached a duty to consult, the next issue is whether the defendant can show prejudice. Typically, *Strickland* requires "actual prejudice"—that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id.* at 482 (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 694). Yet in this context, by failing to file an appeal, counsel's deficient performance "deprive[s] [the defendant] of the appellate proceeding altogether." *Id.* at 483. Accordingly, "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

DeWald's § 2255 petition seeks to invoke both the *Flores-Ortega* scenarios. He alleges (1) that his counsel "failed to file a notice of appeal after I requested him to do so

8

via mail," and (2) that his counsel "did not consult with [him] about filing an appeal to the Tenth Circuit." R. vol. 1 at 64. Both arguments are meritless.

### A.     Appeal Request

The district court rejected DeWald's first argument, finding that DeWald never requested that his counsel file an appeal. We review that factual finding for clear error. *See Clayton v. Jones*, 700 F.3d 435, 442 (10th Cir. 2012); *see also United States v. Clark*, 596 F. App'x 696, 703 (10th Cir. 2014) (unpublished) ("We discern no clear error in the district court's determination that Clark did not request an appeal."). A district court's finding of fact is clearly erroneous only "if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *United States v. Pulliam*, 748 F.3d 967, 970 (10th Cir. 2014) (internal quotation marks and citation omitted).

Here, the record contains a sworn affidavit, signed by DeWald's counsel, stating that he "did not speak with [DeWald] regarding an appeal[.]" R. vol. 1 at 135. Additionally, DeWald's October 15, 2018 letter—through which he claims that he requested an appeal—never mentions an appeal. In the letter, DeWald instead requests "a copy of my entire case file" so that he could "examine whether or not [he] possess[ed] any viable ground for relief under inter alia 28 USC § 2255." *Id.* at 136.

Even under the most generous interpretation, this letter conveys no more than that DeWald was considering whether he wanted to file a collateral challenge, not that he was directing his attorney to file a direct appeal. This conclusion is buttressed by considering the letter's date: October 15, 2018. The district court had entered judgment on June 14,

9

2018. DeWald's notice of appeal was due June 28, 2018. *See* Fed. R. App. P. 4(b)(1)(A)(i). So even if DeWald's counsel had received the letter the day it was drafted, the time for a direct appeal would have long passed.[3] We reject DeWald's contention that this untimely letter, which does not mention an appeal, conveyed to his attorney his desire to file a direct appeal.

The record supports the district court's finding that DeWald never requested a direct appeal, so we conclude that the court's finding is not clearly erroneous. As a result, we rule that DeWald's counsel was not constitutionally ineffective for failing to heed DeWald's explicit request for an appeal.

## B.    Duty to Consult

Even if DeWald's counsel was not under specific orders to file an appeal, that does not necessarily mean that he had no duty to consult about the possible merits of an appeal. The first question courts should ask when addressing this issue, the *Flores-Ortega* Court instructed, is "whether counsel in fact consulted with the defendant about an appeal." 528 U.S. at 478. Here, DeWald's counsel stated in his affidavit that he "did not

---

[3] Without citing any record evidence, DeWald claims in his supplemental brief that, in addition to the letter, he repeatedly called his counsel about filing an appeal. But DeWald's counsel swore in his affidavit that "I have [no] records of missed calls from him regarding an appeal." R. vol. 1 at 135. Because DeWald does not say when he made the calls or whether he left a voicemail requesting an appeal, we see no reason to question the district court's finding that these "attempts would not be enough to show that [his counsel] should have reasonably known Mr. De[W]ald was interested in appealing." *Id.* at 151. And regardless, DeWald does not advance his phone-call argument on appeal, so it is waived. *See, e.g.*, *United States v. Wade*, 768 F. App'x 870, 873 (10th Cir. 2019) (unpublished) (concluding that a habeas petitioner waived arguments he had raised in his original § 2255 petition when he failed to advance them in his opening brief and COA application on appeal).

consult with [DeWald] after sentencing about an appeal." R. vol. 1 at 134. Because

DeWald's counsel did not consult, the next issue is whether he had a duty to do so.[4] We

review de novo whether counsel has a duty to consult. *United States v. Kelley*, 318 F.

App'x 682, 686 (10th Cir. 2009) (per curiam) (unpublished); *see also United States v.

Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002).

DeWald's counsel had a duty to consult about an appeal if he had "reason to think

either (1) that a rational defendant would want to appeal (for example, because there are

nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably

demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S.

at 480. For the reasons discussed, DeWald did not reasonably convey that he was

interested in appealing; thus, his counsel had a duty to consult only if a rational defendant

would have wanted an appeal under the circumstances. In our analysis of that question,

whether the defendant pleaded guilty is "a highly relevant factor[.]" *Id.* We also consider

whether the defendant received a bargained-for sentence and whether the defendant

waived his or her appellate rights. *Id.*

---

[4] In *Flores-Ortega*, the Court specified that, in some cases, counsel will not have a duty to consult if the sentencing court provided a clear and detailed discussion of the defendant's appellate rights. 528 U.S. at 479–80. But in *Herring*, we concluded that a district court's discussion of those rights was not "specific enough to substitute for counsel's duty to consult," because the court did not explain what arguments the defendant could have raised on appeal or the arguments' possible merits—important topics that defense attorneys should cover with their defendant clients. *See* 935 F.3d at 1110 (citing *Baker v. Kaiser*, 929 F.2d 1495, 1499 (10th Cir. 1991)). As in *Herring*, the district court here generally advised that DeWald had the right to appeal, but the court neither consulted about what claims he could raise nor assessed the strengths and weaknesses of those claims. For this reason, we do not apply this exception here.

11

Here, DeWald waived his constitutional right to a jury trial, acknowledged that his plea was voluntary, and swore that he was, "in fact, guilty[.]" R. vol. 1 at 91–92. Further, DeWald stated in his petition to enter his guilty plea that he understood that, by pleading guilty, he faced a maximum sentence of twenty years. At his change-of-plea hearing, he confirmed that he understood and accepted that this was the maximum sentence available. Thus, because DeWald pleaded guilty without a plea agreement, a sentence up to twenty years was the sentence for which DeWald had bargained.

But the district court did not impose the maximum sentence; it sentenced him within his guidelines range after crediting DeWald's acceptance of responsibility. DeWald received the benefit of his plea. *See United States v. Green*, ___ F. App'x ___, No. 19-7033, 2020 WL 2904042, at *1–4 (10th Cir. June 3, 2020) (unpublished) (ruling that no rational defendant would have desired to file an appeal when the defendant, who did not have a plea agreement, received a within-guidelines sentence, despite his having received an unexpected sentencing enhancement for his admitted perjury during the change-of-plea hearing); *United States v. Benoit*, 274 F. App'x 689, 693 (10th Cir. 2008) (unpublished) (concluding that the defendant received the benefit of his bargain when he "received a within-Guidelines sentence, which he expressly acknowledged would be acceptable at his change of plea hearing"). And as for the appeal-waiver factor, though DeWald did not waive his appellate rights, "the mere fact that [DeWald] did not waive his right to appeal would not, in and of itself, have provided his counsel with a reason to believe that he wanted to appeal." *Green*, ___ F. App'x at ___, 2020 WL 2904042, at *3; *see also United States v. Ennis*, 528 F. App'x 874, 878–79 (10th Cir. 2013) (unpublished)

12

(concluding that, even though the defendant's plea agreement did not waive the defendant's appellate rights, that the defendant had "received the sentence bargained for weighs against an obligation on the part of his attorney to consult" (internal quotation marks and citation omitted)); *cf. Flores-Ortega*, 528 U.S. at 480 (noting that "a plea may indicate that the defendant seeks an end to judicial proceedings").

With all this said, in our view, the deciding factor here is that all of DeWald's proposed appellate arguments are frivolous. *See Flores-Ortega*, 528 U.S. at 479–80 (noting that, when considering if a rational defendant would desire an appeal, courts should consider whether a nonfrivolous basis exists for an appeal); *Smith v. Allbaugh*, 921 F.3d 1261, 1270 (10th Cir. 2019) (citing *Flores-Ortega* for the proposition "that nonfrivolousness is [a] factor in both deficient-performance and prejudice prongs of [a] failure-to-consult claim"). For instance, in his § 2255 petition, DeWald incorrectly argues that the district court improperly applied a threat-of-death enhancement. The district court never applied such an enhancement, and even if it had, the career-offender enhancement would have mooted the threat-of-death enhancement: DeWald's total-offense level with the career-offender enhancement (thirty-two) was greater than it would have been with the threat-of-death enhancement (twenty-four). *See* U.S.S.G. § 4B1.1(b) (noting that if the offense level set by the career-offender table "is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply"); *id.* § 1B1.1(a) (stating that courts must "apply any appropriate specific offense characteristics," such as those described in § 2B3.1(b), before applying Chapter 4 Part B adjustments); *see also United States v. Coleman*, 160 F. App'x 776, 777 (10th Cir. 2005)

(unpublished) (noting that an enhancement for "an express threat of death" was moot

"once it was determined that the career offender provision of U.S.S.G. § 4B1.1 applied").

Just as frivolous, DeWald argues now (as he did in the district court)[5] that

applying the career-offender enhancement violates the Double Jeopardy Clause. But this

argument is foreclosed by circuit precedent. *United States v. Andrews*, 447 F.3d 806, 810

(10th Cir. 2006) ("Because the career offender enhancement merely increases Andrews'

penalty for his current crime, it does not violate the Double Jeopardy Clause."); *see also*

*United States v. Ramirez*, 613 F. App'x 711, 713 (10th Cir. 2015) (unpublished)

(describing this argument as "frivolous").[6]

Balancing the *Flores-Ortega* factors, we conclude that in the circumstances of this

case DeWald's counsel had no duty to consult about an appeal and did not provide

---

[5] We address this argument because it is the only one that DeWald raised in his supplemental brief that he still pursues on appeal. After thoroughly examining the record, we agree with the district court that the remaining arguments in DeWald's supplemental brief are frivolous, and we do not address them, because DeWald has abandoned them on appeal. *See Wade*, 768 F. App'x at 873.

[6] That DeWald has no nonfrivolous grounds for appeal is evident by juxtaposing his case and those cases in which we have concluded that defendants did in fact have nonfrivolous grounds for appeal. For example, in *Smith*, we concluded that the defendant could have presented a nonfrivolous argument on appeal when the defendant's second attorney knew or should have known that defendant's first attorney had failed to tell the defendant that the government had offered a plea deal. 921 F.3d at 1269–70; *see also Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). Analogously, in *Heard v. Addison*, 728 F.3d 1170, 1180–81, 1187 (10th Cir. 2013), we ruled that "a rational defendant would have wanted to appeal" when the defendant's counsel recommended that he plead guilty to lewd molestation without advising that he had "a powerful argument that his conduct was not criminal[.]" The legal issues that DeWald poses in this case pale in comparison.

ineffective assistance by failing to do so. And because DeWald thus has not satisfied *Strickland*'s first prong, DeWald necessarily has failed to demonstrate "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

## CONCLUSION

A reasonable jurist would not debate the district court's assessment of DeWald's Sixth Amendment claims, so we deny a COA and dismiss this case. We also deny DeWald's motion to proceed *in forma pauperis*.[7]

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[7] Our conclusion that DeWald has presented only frivolous arguments precludes our granting his *in forma pauperis* motion. *See DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991) (ruling that a successful *in forma pauperis* motion requires "a reasoned, nonfrivolous argument on the law and facts" (citations omitted)).